MATTHEW WATSON, PLAINTIFF IN ERROR, *v.* COLIN S. TARPLEY.

The regularity and legality of the proceedings which take place as to protest and notice upon a dishonored bill of exchange, is a question of law for the court to decide, and not a question to be left to the jury.

By the general rules of commercial law, the payee or indorsee of a bill, upon its presentment and upon refusal by the drawee to accept, has the right to immediate recourse against the drawer.  He is not bound to wait to see whether or not the bill will be paid at maturity.

A statute of a State, which forbids a suit from being brought in such a case until after the maturity of the bill, can have no effect upon suits brought in the courts of the United States.  So also, if the statute seeks to make the right of recovery, in a suit brought in case of non-acceptance, dependent upon proof of subsequent presentment, protest, and notice for non-payment.

The decisions of this court upon these points, examined.

THIS case came up, by writ of error, from the circuit court of the United States for the southern district of Mississippi.

The facts are stated in the opinion of the court.

It was argued by *Mr. Badger*, for the plaintiff in error, no counsel appearing for the defendant.

Mr. Justice DANIEL delivered the opinion of the court.

On the 29th April, 1850, the plaintiff in error, a citizen of Tennessee, brought this action of *assumpsit* against the defendant, a citizen of Mississippi, in the circuit court of the United States for the southern district of Mississippi, upon a bill of exchange, dated 4th April, 1850, drawn by the defendant upon Messrs. McKee, Bulkely, and Co., of New Orleans, Louisiana, for $2,327.49, payable twelve months after date, in favor of James Bankhead, and by him indorsed to the plaintiff, and declared in two counts—one on the non-acceptance and the other on the non-payment of the said bill.  Pr. Rec., p. 4.   The defendant pleaded "*non assumpsit*," and on this plea issue was joined, (page six,) and the action tried on the 11th of January, 1855,

when a verdict was found for the defendant. On the trial, a bill of exceptions was taken by the plaintiff in error, from which it appears that the plaintiff read in evidence the bill of exchange, and proved the presentment thereof to the drawers, at their office in New Orleans, for acceptance on the 27th of April, 1850, the due protest thereof for non-acceptance, and a notification of its dishonor given the same day by letter addressed to the defendant at his residence in Mississippi. See Notarial Protest and Depositions, 17–22.

The plaintiff also proved the presentment of the said bill for payment on the 7th April, 1851, the refusal of payment, the due protest thereof, and notice to the defendant. See Notarial Protest and Depositions of H. B. Cenas, A. Commandeur, and Charles F. Barry, 7–15.

The defendant then offered to read in evidence a certificate, set out on the 23d page of the Record; and which being read, after objection taken thereto by the plaintiff, the judge instructed the jury. Record, 23.

" That the plaintiff was not entitled to recover on the count in the declaration on the protest of the bill for non-acceptance, unless due and regular notice was proved of the protest of the bill for non-payment, though the jury might be satisfied from the proof, that the bill had been regularly protested for non-acceptance, and due notice thereof given to the defendant; that, to entitle the plaintiff to recover, notwithstanding the proof of protest for non-acceptance and due notice thereof, the plaintiff must prove protest for non-payment and due notice thereof, to the defendant; and that the jury were the judges of the testimony, and could give to the witnesses such credit as they thought them entitled to, looking to all the circumstances of the case."

The material questions involved in this case are comprised within a comparatively narrow compass, and present themselves prominently out upon the face of the record. On each of the questions thus deemed material, we think that the circuit court has erred.

Upon the relevancy or effect of the certificate of H. B. Cenas, under date of the 7th of April, 1851, and which was under an exception by the plaintiff permitted to be read in evidence with the view of impairing the previous statement of this witness as to the regularity of his proceedings upon the dishonor of the bill, we do not think it necessary to express an opinion. Our views of the law of this case as applicable to the instruction given by the circuit court, are in no degree affected by the character of the statements in that certificate.

We think that the instruction of the court was erroneous in

committing it to the jury to determine whether the proceedings as to protest and notice upon the dishonor of the bill for non-payment were regular and legal. This is a matter which must, upon the facts given in evidence, be determined by the court as a question of law, and which cannot be regularly submitted to the jury. Such is the doctrine uniformly ruled by this court; we mention the cases of the Bank of Columbia v. Lawrence, 1 Pet. 578; Dickins v. Beale, 10 Ib. 572; Rhett v. Poe, 2 How. 457; Camden v. Doremus et al. 3 Ib. 515; Harris v. Robinson, 4 Ib. 336; Lambert v. Ghiselin, 9 Ib. 552. To the same point might be cited the several English decisions referred to in the case of Rhett v. Poe, already mentioned.

We also hold to be erroneous the instruction of the court declaring that after presentment of the bill for acceptance, and after regular protest and notice for non-acceptance, an action could not be maintained by the payee or indorsee until after the maturity of the bill, and then only upon proof of demand for payment, and of a regular protest and notice founded upon the refusal to pay.

It is a rule of commercial law, too familiarly known to require the citation of authorities, or to admit of question, that the payee or indorsee of a bill upon its presentment and upon refusal by the drawee to accept, has the right to immediate recourse against the drawer. Upon no principle of reason or justice can he be required to await the maturity of the bill, by the dishonor of which he has been assured that it will not be paid, and with which the drawee has disclaimed all connection. Justice to the drawer, with the view of enabling him to guard himself from injury, imposes upon the holder the obligation of protest and notice upon non-acceptance; but beyond this, he sustains no connection with the drawee of the bill, and is under no obligation afterwards to present the latter for payment; of course, he cannot be rightfully held to protest and notice for non-payment.

In the several compilations of the law of bills and notes by Kyd, Bayley, Chitty, Byles, and Story, are collected the decisions by which this doctrine has been settled.

It has been suggested that the instruction by the judge at circuit, may have been founded upon a provision in a statute of the State of Mississippi of 1836, contained in a collection of the laws of that State by Howard and Hutchinson, pp. 375, 376, § 18, by which, amongst other enactments, it is declared that "no action or suit shall be sustained or commenced on any bill of exchange, until after the maturity thereof;" and this prohibition or postponement of the right of action it is thought may have been interpreted by the judge as requiring after presentment for

acceptance, and, after protest and notice upon non-acceptance, a like presentment and demand for payment upon the maturity of the bill ; and upon refusal to pay, a like protest and notice in order to authorize a recovery.

The answer to the above suggestion is this: that if such be a just interpretation of the statute of Mississippi, that interpretation, and the consequences deducible therefrom, we must regard as wholly inadmissible.

Whilst it will not be denied, that the laws of the several States are of binding authority upon their domestic tribunals, and upon persons and property within their appropriate jurisdiction, it is equally clear that those laws cannot affect, either by enlargement or dimunition, the jurisdiction of the courts of the United States as vested and prescribed by the constitution and laws of the United States, nor destroy or control the rights of parties litigant to whom the right of resort to these courts has been secured by the laws and constitution. This is a position which has been frequently affirmed by this court, and would seem to compel the general assent upon its simple enunciation.

In the case of Swift *v.* Tyson, 16 Pet. 1, this court in giving a construction to the 34th section of the judiciary act, which declares "that the laws of the several States, except where the constitution, treaties, or statutes of the United States shall otherwise require or provide, shall be regarded as rules of decision in trials at common law in the courts of the United States, in cases where they apply," has said: "It never has been supposed by us, that this section did apply, or was intended to apply, to questions of a more general nature, not at all dependent upon local statutes or local usages of a fixed and permanent operation; as, for example, to the construction of ordinary contracts or other written instruments, and especially to questions of general commercial law, where the state tribunals are called upon to perform the like functions as ourselves; that is, to ascertain upon general reasoning and legal analogies, what is the true exposition of the contract, or what is the just rule furnished by the principles of commercial law to govern the case." Again, in the same case it is said by this court: "The law respecting negotiable instruments may be truly declared, in the language of Cicero, adopted by Lord Mansfield in Luke *v.* Lyde, 2 Burr, 883, 887, to be in a great measure not the law of a single country only, but of the commercial world."

In the cases of Keary *v.* The Farmers and Merchants of Memphis, 16 Pet. 89, and of Droingoole *v.* The Farmer's Bank, 2 How. 241, it was ruled by this court, that the courts of the United States themselves, can have no authority to adopt any provisions of state laws which are repugnant to or incompatible

with the positive enactments of congress, upon the jurisdiction, or practice, or proceedings of such courts.

The general commercial law being circumscribed within no local limits, nor committed for its administration to any peculiar jurisdiction, and the constitution and laws of the United States having conferred upon the citizens of the several States, and upon aliens, the power or privilege of litigating and enforcing their rights acquired under and defined by that general commercial law, before the judicial tribunals of the United States, it must follow by regular consequence, that any state law or regulation, the effect of which would be to impair the rights thus secured, or to devest the federal courts of cognizance thereof, in their fullest acceptation under the commercial law, must be nugatory and unavailing. The statute of Mississippi, so far as it may be understood to deny, or in any degree to impair the right of a non-resident holder of a bill of exchange, immediately after presentment to, and refusal to accept by the drawee, and after protest and notice, to resort forthwith to the courts of the United States by suit upon such bill, must be regarded as wholly without authority and inoperative. The same want of authority may be affirmed of a provision in the statute which would seek to render the right of recovery by the holder, after regular presentment and protest, and notice for non-acceptance, dependent upon proof of subsequent presentment, protest, and notice for non-payment.

A requisition like this would be a violation of the general commercial law, which a State would have no power to impose, and which the courts of the United States would be bound to disregard.

We think that the instruction given by the circuit court in this case was erroneous; that its decision should be, as it is hereby reversed; and the cause is remanded to the circuit court, to be proceeded in upon a *venire de novo,* in conformity with the principles above ruled.