## OATES *v.* NATIONAL BANK.

1. The courts of the United States are not bound by the decisions of State courts upon questions of general commercial law.
2. A creditor who before its maturity accepts a negotiable note, so indorsed that he becomes a party thereto, as collateral security for a pre-existing debt, in consideration of an extension of time granted to the debtor, is, according to the law merchant, a holder for value, and his rights as such are not affected by equities between antecedent parties of which he had no notice.
3. "Bills of exchange and promissory notes, payable in money at a certain place of payment therein designated," are, by an act of the legislature of Alabama, put upon the same basis as to immunity from set-off, discount, or equities as bills and notes payable at a bank or private banking-house. Such declared to be the intention and effect of the act of April 8, 1873, amending sect. 1833 of the Revised Code of that State.
4. The legislative intent, clearly expressed, should not be defeated by too rigid an adherence to the mere letter of the statute, nor an interpretation adopted which leads to absurd consequences.
5. At the request of its debtor, a national bank in Alabama gave him further time, in consideration of his transferring, before maturity, a negotiable note, as collateral security, and paying in advance usurious interest, for the period of extension. The note was so indorsed as to make the bank a party to the instrument, responsible for its due presentation, and for due notice of non-payment. The consideration being in part legal and in part vicious it was *held*, 1st, that the former was itself sufficient to sustain the contract of extension and transfer, and to constitute the bank a holder for value; 2d, that the National Banking Act subjects the bank to liability for taking usurious interest, but does not declare the contract of indorsement void, and that no such penalty being prescribed, the courts cannot superadd it.

ERROR to the Circuit Court of the United States for the Middle District of Alabama.

The facts are stated in the opinion of the court.

*Mr. W. Hallett Phillips* and *Mr. William C. Oates* for the plaintiff in error.

*Mr. H. C. Semple* for the defendant in error.

MR. JUSTICE HARLAN delivered the opinion of the court.

This is a writ of error to a judgment in favor of the First National Bank of Montgomery, against Oates, the plaintiff in error, upon a promissory note for $5,200, executed by him at Eufala, Ala., on the twenty-fifth day of July, 1873, and made payable on the 1st of December thereafter, to the order of

B. H. Micow, president, at the office of the Tallassee Manufacturing Company, No. 1, in the city of Montgomery. The consideration of the note was fifty shares of the capital stock of that company purchased by Oates, for which, at the time, he received a certificate in the customary form. As part of the contract of purchase, he took from the company a separate written obligation, reserving to him the option, on the 1st of December, 1873, at the maturity of the note, of surrendering the certificate of stock and receiving his note duly cancelled. It appears that he was induced to buy the stock upon certain representations of the special agent of the company as to its financial condition. These representations were subsequently ascertained by him to have been false and fraudulent.

On or about Nov. 4, 1873, Micow applied to the bank for an extension of time upon certain indebtedness then held by it against the company, amounting to about $40,000, and all of which matured thereafter and in that month. That indebtedness had been previously extended, on several occasions, at usurious rates of interest, paid invariably in advance. The bank signified its willingness to give an extension for thirty, sixty, ninety, and one hundred and twenty days, upon collateral security being furnished, and upon the payment in advance for such extension of interest at the rate of one and one-quarter per cent per month, upon the different classes of the company's paper by it held. These conditions were complied with, and the extension was accordingly made for the periods stated. The required interest was not carried into the extension bills, but was paid in advance. Among the collaterals placed with the bank, under this arrangement, was the note for $5,200 already described, indorsed in blank, " B. H. Micow, Prest."

The evidence was somewhat conflicting as to whether the officers of the bank, at the time of receiving the note in question, had actual notice from Oates as to its consideration. It was, however, conceded that its president had reason to believe the note was given for stock of the company. Oates, although residing at Eufala, was a stockholder and director of the bank. No inquiry was made of him by the officers of the bank, before receiving the note as collateral security, as to any defence

which he might have against its payment. But it was proven by them that, when the extension was given to the company, they had no notice of any defect in or defence to the note, or of any equities, except such notice as might be implied from the foregoing facts and the relations of the parties. It is not claimed that the bank had, at that time, any notice of the separate written obligation of the manufacturing company to which we have already referred.

On the 24th of November, 1873, the bank gave written notice to Oates that it held his note as collateral security for the indebtedness of the company. A few days thereafter he transmitted to the bank the company's agreement or obligation, under which he had purchased the stock and given his note, informing its officers that he had, by the same mail, returned his stock-certificate to the company, and demanded the surrender and cancellation of his note. The bank, replying to this notification, stated that it had purchased the note as negotiable paper, in good faith, for a valuable consideration, and without notice of any private understanding between Oates and the company, its officers or agents.

These are the essential facts developed in the record. We are to inquire whether the court below committed any error of law to the prejudice of the plaintiff in error.

The first contention of the plaintiff in error is, that, by the terms of the contract under which he purchased the stock and gave his note, and in view of the false and fraudulent representations of the company's agent as to its financial condition, he was entitled, as of absolute right, to surrender the certificate of stock and have his note returned or cancelled; and, further, that his defence, upon that ground, was secured to him by the statutes of the State of Alabama, in force when the contract was made.

It is clear that, as between the Tallassee Manufacturing Company and Oates, the defence of the latter is perfect. And it would undoubtedly be sustained, even against the defendant in error, were it true, as claimed, that, by the statutes of Alabama, the transfer of the note was without prejudice to any defence which the maker might assert against the payee. This renders it necessary that we should ascertain to what

extent, if at all, the rights of parties are affected or controlled by the statutes of Alabama.

By sect. 1833 of the Revised Code of that State it is declared that " bills of exchange and promissory notes payable in money, at a bank or private banking-house, are governed by the commercial law, except so far as the same is changed by this code." Sect. 1839 declares that " all contracts or writings, except bills of exchange, promissory notes payable in money at a bank or private banking-house, and paper issued to circulate as money, are subject to all payments, set-offs, and discounts had or possessed against the same, previous to notice of the assignment or transfer."

Thus stood the law of Alabama until April 8, 1873, when, by statute of that date, entitled " An Act to amend sect. 1833 of the Revised Code of Alabama," it was enacted that sect. 1833 (copied in full in the act) " be so amended as to read as follows : ' Bills and notes payable at a banker's or *a designated place of payment,* are *negotiable instruments ;* bills of exchange and promissory notes payable in money at a bank or *a certain place of payment therein designated,* are governed *by the commercial law.'* " Acts 1872–73, p. 111. By the same statute, sect. 1833, as it then stood in the Revised Code, was expressly repealed. It should be observed that the words " except so far as the same is changed by this code," in sect. 1833 as it originally stood, are omitted from that section as remodelled by the act of 1873.

The argument of the plaintiff in error is, that although, by the explicit declaration in the act of 1873, " bills and notes payable in money at a certain place of payment, therein designated," are negotiable instruments, to be governed by the commercial law, such bills and notes are, nevertheless, under sect. 1839, " subject to all payments, set-offs, and discounts had or possessed against the same, previous to notice of the assignment or transfer." We concur with the court below in holding that construction to be wholly inadmissible. It seems that upon this precise point there has been no direct adjudication by the Supreme Court of Alabama, to which primarily belongs the duty of giving authoritative construction of the statutes of that State. The only case in that court to which we are

referred, that has any bearing upon this question, is *Cook* v. *Mutual Insurance Co.*, 53 Ala. 37. Jones, it seems, gave to Cook, in 1871, a promissory note, payable to the order of the latter at the office of W. H. Roberts, Mobile, and indorsed by the payee to the insurance company. In an action instituted by the latter against Cook, the question arose as to whether the note was commercial paper, protected, in the hands of a *bona fide* holder for value, against defences resting upon payment, set-off, or discount. The inferior State court ruled that it was paper of that kind; but the Supreme Court of Alabama held that the note, when made, was not commercial paper, and that the rights and liabilities of the parties were to be determined by the statute in force at the date of its execution. That court, speaking by its Chief Justice, said: "Since the making of the promissory note, on the indorsement of which this suit is founded, the statute of April 8, 1873, has converted promissory notes, payable in money at a designated place, into negotiable instruments governed by the commercial law. It operates on the nature and obligation of the contract of the parties to such notes, and cannot be construed as affecting notes made and indorsed prior to its passage. The law in force when the note is made and indorsed regulates and defines the liability of the parties." No other reasons are assigned in support of the conclusion that the act of 1873 did not control the case. It is quite manifest from the language employed by the court, that, had the note there in suit been executed subsequently to the act of 1873, it would have sustained the ruling of the inferior State court, and excluded all defences inconsistent with the established doctrines of the commercial law. Such, in our opinion, must have been its determination upon any proper construction of the act of 1873. It is true that that statute does not in express words *amend* sect. 1839, whereby *only* "bills of exchange and promissory notes, payable in money at a bank or private banking-house, and paper issued to circulate as money," are, in terms, protected against payments, set-offs, and discounts, which the maker might assert in the case of all other contracts and writings. But it is perfectly evident that the object of the act of 1873 was to place bills of exchange and promissory notes, pay-

able at a certain designated place of payment, upon exactly the same basis, as to immunity from set-off, discount, or equities, as the statute prescribed in reference to bills and notes payable at a bank or private banking-house. In declaring that bills and notes of the former class were negotiable instruments, to be governed by the commercial law, the legislature necessarily intended to throw around such paper the same protection that had previously been given by statute to bills and notes payable at banks or private banking-houses. If such was not its object, then, confessedly, the act of 1873 was both meaningless and illusory. The duty of the court, being satisfied of the intention of the legislature, clearly expressed in a constitutional enactment, is to give effect to that intention, and not to defeat it by adhering too rigidly to the mere letter of the statute, or to technical rules of construction. *Wilkinson* v. *Leland*, 2 Pet. 627; Sedgwick, Const. and Stat. Constr. 196. And we should discard any construction that would lead to absurd consequences. *United States* v. *Kirby*, 7 Wall. 482. We ought, rather, adopting the language of Lord Hale, to be " curious and subtle to invent reasons and means " to carry out the clear intent of the law-making power when thus expressed. The defence of the plaintiff in error would be good under sect. 1839, if no regard was had to the act of 1873; but since that statute expressly included notes payable at a certain designated place in the class of negotiable instruments to be governed by the commercial law, — which could not be if sect. 1839 be enforced according to its literal import, — the judiciary must respect the latest expression of the legislative will, and not permit it to be eluded by mere construction. " A thing which is within the intention of the makers of a statute is as much within the statute as if it were within the letter; and a thing which is within the letter of the statute is not within the statute unless it be within the meaning of the makers." *Suckley* v. *Furse*, 15 Johns. (N. Y.) 338; *The People* v. *Utica Insurance Co.*, id. 357, 380.

For these reasons we are of opinion that the statutes of Alabama do not permit, as against a *bona fide* holder, for value, of a " promissory note, payable in money at a certain place of payment therein designated," defences which are dis-

allowed in cases where the note is payable at a bank or private banking-house.

Giving to the Alabama statute the construction indicated, our next inquiry is, whether the bank, under the circumstances disclosed in this case, became, according to the recognized principles of commercial law, a *bona fide* holder for value of the note in suit. That it acquired the note in good faith, without fraud, we are not permitted by the evidence to doubt. Its officers were not bound to inquire of Oates, before they took the note, whether he had any defence or set-off. They rightfully supposed, as the face of the note imported, that he had undertaken absolutely to pay the amount specified at the time and place designated. That the president of the bank had reason to believe it was given for stock of the Tallassee Manufacturing Company is a fact of no significance whatever in determining the question of good faith. Having no knowledge or notice of the private agreement between Oates and the company, as set forth in the separate obligation of the latter, which was withheld from the public, the bank officers justly assumed that there was no circumstance attending the sale of the stock which could lessen the obligation of Oates to pay the note according to its tenor and effect.

But it is contended that by the rules of commercial law, as recognized by the Supreme Court of Alabama, one who receives a promissory note as collateral security for a pre-existing debt does not become a purchaser for value, in the course of business, so as to cut off equities which the maker may have against the payee. Such was declared to be the settled doctrine of that court in *Fenouille* v. *Hamilton*, 35 Ala. 319. But the opinion in that case contains some passages which apply with peculiar force to a suit like this. The court said: " In this case there was no other consideration for the transfer of the note to the defendant than the security of the pre-existing indebtedness of the defendant's indorsee. The fact that the defendant may have been led to grant indulgence, or forbear to enforce his remedies for the collection of the debts, does not prove that such indulgence or forbearance was an element of the contract, or the consideration upon which it was made. If there was any forbearance by the defendant, it was a voluntary act to

which he may have been persuaded by the collateral security, and may have resulted from a consciousness of security; but such forbearance was not the result of contract, and is not shown to have been the consideration of it." Had there been, in that case, a present consideration for the transfer of the note beyond giving security for a pre-existing debt, or had the forbearance of the creditor to enforce his remedies been an element in a binding contract, under which the collateral security was furnished, we are persuaded that the Alabama court would have ruled that the creditor, in receiving the collateral, became a holder for value in the course of business. But, if we are mistaken in our interpretation of the decision of the Supreme Court of Alabama, the result will not follow for which plaintiff in error so earnestly contends. While the Federal courts must regard the laws of the several States, and their construction by the State courts (except when the Constitution, treaties, or statutes of the United States otherwise provide) as rules of decision in trials at common law in the courts of the United States, in cases where applicable, they are not bound by the decisions of those courts upon questions of general commercial law. Such is the established doctrine of this court, so frequently announced that we need only refer to a few of the leading cases bearing upon the subject. *Swift* v. *Tyson*, 16 Pet. 1; *Carpenter* v. *Prov. Ins. Co.*, id. 495; *Watson* v. *Tarpley*, 18 How. 517. We have already seen that the statutes of Alabama placed under the protection of the commercial law promissory notes, payable in money at a certain designated place; but how far the rights of parties here are affected by the rules and doctrines of that law is for the Federal courts to determine upon their own judgment as to what these rules and doctrines are.

Upon principle and authority, we do not doubt that the defendant in error was, in the sense of the commercial law, a *bona fide* holder for value of the note in suit. In *Swift* v. *Tyson* (*supra*), cited by counsel, this court, speaking by Mr. Justice Story, said that it entertained no doubt " that a *bona fide* holder for a pre-existing debt of a negotiable instrument is not affected by any equities between antecedent parties, when he has received the same before it became due, without notice of any

such equities." In some of the State courts the authority of that case has been disputed, so far as the language of the court referred to collateral security received for a pre-existing debt, upon the ground that the note there in suit was transferred in payment of, and not as security for, a pre-existing debt, and that, consequently, the opinion expressed in the language just quoted was unnecessary to the decision of the point in issue. In the more recent case of *Goodman* v. *Simonds* (20 How. 334), it was contended that a party who took negotiable paper *merely* as collateral security for a pre-existing debt did not acquire it in the usual course of business, but took it subject to prior equities. The court being of opinion that no such question was presented by the record, waived its consideration. But after an extended review of the authorities, American and English, the court, speaking through Mr. Justice Clifford, said: "It seems now to be agreed that, if there was a present consideration at the time of the transfer, independent of the previous indebtedness, a party acquiring a negotiable instrument, before its maturity, as a collateral security to a pre-existing debt, without knowledge of the facts which impeach the title as between the antecedent parties, thereby becomes a holder in the usual course of business, and that his title is complete, so that it will be unaffected by any prior equities between other parties, at least to the extent of the previous debt, for which it is used as collateral."

That language would seem to be conclusive of the question under consideration. There was here a present consideration at the time of the transfer, independent of the indebtedness of the manufacturing company to the bank. That consideration as to the bank was the unconditional extension of time upon all the company's indebtedness, for different periods reaching beyond the maturity of the note transferred as collateral security. Such extension for fixed periods was a cardinal element of the contract. The creditor forbore pursuit of the remedies which the law supplied for the enforcement of his demands, then soon to mature, in consideration of collateral security being furnished, and in consideration also of the payment by the debtor of usurious interest in advance. Besides, having received the note, indorsed so that it became a party thereto,

the bank was bound to observe all the rules of the law merchant as to presentation, protest, and notice of non-payment. It did not receive the note as the agent of the debtor, and merely for collection. It took it under all the responsibility as to presentation, protest, and notice of dishonor, which attached to absolute ownership, and became liable to have the note treated as payment *pro tanto*, if there were a failure to make due presentation, and, in the event of non-payment, to give proper notice to the creditor. The debtor could not. withdraw his indorsement after delivering the note, under the contract for extension, nor could the bank, after receiving the note under that contract, disregard its agreement for forbearance. Nor was the bank any the less bound by the contract for extension because of the payment in advance of usurious interest by its debtor. Although the taking of usurious interest subjected the bank to certain forfeitures prescribed by law, and to an action by the debtor, if he so elected, to recover twice the amount so paid by him, it could not, of its own volition or by its own act, avoid the contract for indulgence because of such payment of usury. The payment in advance was itself a sufficient consideration for the extension, in the sense that the bank would not be allowed to repudiate its agreement, upon the ground that it had taken usurious interest in violation of law. 2 Daniel, Neg. Inst., sect. 1317. But independent of that aspect of the case, and throwing out of view altogether the usurious feature of the contract, we are of opinion that a creditor, who takes a negotiable note before maturity, so indorsed that he becomes a party to the instrument as collateral security for a pre-existing debt, and in consideration of an extension of time to the debtor, actually granted, is, according to the law merchant, a holder for value, and that his rights as such holder cannot be affected by equities between antecedent parties, of which he had no notice. *Goodman* v. *Simonds*, *supra ;* 1 Parsons, Notes and Bills, 221–228 ; Story, Promissory Notes, sect. 195, notes (7th ed., by Thorndike) ; 1 Daniel, Neg. Inst. (2d ed.), sects. 820, 832, and notes ; Leading Cases upon Bills of Exchange and Promissory Notes, by Redfield and Bigelow, 186–217, and notes. Whether the taking of such note merely as collateral security for antecedent debts, without any binding

contract for indulgence, would constitute a valuable considera-
tion within the established rules of commercial law, protecting
the creditor against defences or equities between antecedent
parties, of which he had no notice, it is not necessary now to
decide. That precise question is not presented in this case, and
we forbear to express any opinion upon it.

One other question remains to be considered. Counsel for
plaintiff in error have pressed with much vigor the suggestion
that the bank, consistently with public policy, should not be
regarded as a *bona fide* holder for value of the note in suit,
since the contract under which it received the note involved
in its execution a direct violation of the statutes against usury.
We are referred in support of that position to several decisions
of the Supreme Court of Alabama which, it must be conceded,
announce the broad doctrine that one " who has become the
indorsee of a bill, by violating the provisions of a statute, can-
not with any degree of propriety be said to be a *bona fide*
holder in the usual course of trade." 13 Ala. 410; 14 id. 688;
16 id. 406. Without extending this opinion by a critical
examination of those cases, we repeat that in the determina-
tion of such a question we are not bound by the decisions of the
State court. The question is one of general law, and depends
in nowise for its solution upon local laws and usages.

We are referred, in this connection, to two cases, *Levy*
v. *Gadsby* (3 Cranch, 180), and *Gaither* v. *The Farmers' &
Mechanics' Bank*, 1 Pet. 37. The first is so meagrely reported
that it is difficult to see the precise ground upon which the
conclusion of the court was placed, and the second is clearly
distinguishable from this. There, a note was indorsed and
delivered as collateral security for a pre-existing debt, evi-
denced by a note given on a usurious contract. The case
was held to be governed by the statute of Maryland, which
declared " all bonds, contracts, and assurances whatever,
taken on a usurious contract," to be utterly *void*. Under
that statute the contract of indorsement was held to be void.
In the eye of the law, it was as though it had never existed,
and consequently no cause of action, it was adjudged, passed
to the indorsee.

The case in hand is altogether different. The statute under

which the bank was organized, known as the National Banking Act, does not declare the contract, under which the usurious interest is paid, to be *void*.

It denounces no penalty other than a forfeiture of the interest which the note or bill carries, giving to the debtor the right to sue for and recover twice the amount of interest so paid. If we should declare the contract of indorsement void, and, consequently, that no right of action passed to the bank on the note transferred as collateral security, an additional penalty would thus be added beyond those imposed by the law itself. " On what principle could this court add another to the penalties declared by the law itself ? " *De Wolf* v. *Johnson*, 10 Wheat. 367 ; *Farmers' & Mechanics' National Bank* v. *Dearing*, 91 U. S. 29 ; *Barnett* v. *National Bank*, 98 id. 555.

Besides, in this case, the forbearance extended to the debtor was not upon the sole consideration of usurious interest paid in advance : it was upon the additional and substantial consideration that the debtor corporation gave collateral security for the payment of indebtedness about to mature, and which it confessed its inability to meet. We have already seen that the transfer of the note before maturity, as collateral security, and so indorsed that the bank became a party to the instrument under obligation to make due presentment and give due notice of non-payment, was itself a sufficient consideration to constitute the bank a *bona fide* holder for value, within the recognized principles of the law merchant. The presence, then, in the contract under which the note was indorsed and delivered to the bank of an additional consideration, — the payment in advance of usurious interest, — which the law declares to be vicious and illegal, ought not to destroy the entire contract of indorsement, when there is a sufficient consideration, aside from the usury paid, upon which it may rest.

We are of opinion that no error of law was committed by the court below.

*Judgment affirmed.*