### BANK OF SHERMAN *v.* E. M. APPERSON & Co.

*(Circuit Court, W. D. Tennessee.* October 13, 1880.)

1. NEGOTIABLE NOTES—RECITING CONSIDERATION—PAYABLE TO AN ADMINISTRATOR.—Neither the fact that a note is payable to an administrator, nor that it recites that it was for value received, "being for a part of the third payment on the Goree plantation, as per agreement of the fourteenth February, 1874," destroys its negotiability, or subjects it to the conditions of that agreement.

2. NEGOTIABLE NOTES — OMISSION OF THE WORDS " OR ORDER." — It is well-settled that a note omitting the words " or order," is not negotiable unless it contains other words of like import; but this has been changed in Tennesse by statute, and neither those nor any equivalent words are necessary.

3. COMMERCIAL LAW—STATE STATUTES—WHEN BINDING.—While no decision or statute of a state restricting or impairing the rights and remedies secured to the citizens of the several states under the general commercial law, or divesting the federal courts of their cognizance of those rights and remedies, is binding on those courts, statutes which *enlarge* the commercial law will be enforced. They are not confined to the commercial law as it exists outside such statutes.

4. NEGOTIABLE NOTES—BONA FIDE HOLDER FOR VALUE.—Nothing less than actual knowledge of the facts relied on to establish the defence of a failure of consideration, or bad faith, can defeat the right of a *bona fide* holder for value to recover on a negotiable note. Mere knowledge of suspicious circumstances, which, if followed up by inquiry, would develop the facts, is not sufficient in the federal courts, although the rule is otherwise in Tennessee. The facts in this case would not, it seems, defeat the recovery in the Tennessee state courts; certainly not in this court.

*T. B. Micon,* for plaintiff.

*Myers & Sneed,* for defendants.

HAMMOND, D. J: On motion for a new trial. Upon full consideration of the arguments made upon this motion, I am satisfied with the rulings I made upon the demurrer and at

the trial upon the points then raised against the negotiability of the note sued on. I think it entirely clear of all doubt that an administrator may negotiate a note made payable to him, and that the recital of the consideration in the face of the note does not at all affect its negotiable character. If the note in question had said that it was subject to the agreement for the purchase of the land, or used other words indicating that it was to be burdened with the conditions of that agreement, the case would be different. *Cushing* v. *Field*, (Sup. Ct. Me.) 13 Chi. Leg. News, 11. The note is hereinafter copied, and I need only refer to its language to show that it is a simple recital of the consideration. *Burchell* v. *Slocock*, 2 Ld. Raym. 1545; *Bailey* v. *Rawley*, 1 Swan, 295; *Baxter* v. *Stewart*, 4 Sneed, 213.

Even in Tennessee, then, where whatever is sufficient to put a person upon inquiry amounts to notice, the mere recital that the consideration was for land does not have this effect. *Ryland* v. *Brown*, 2 Head, 270; *Merritt* v. *Duncan*, 7 Heisk. 156. But in the courts of the United States, where the rule is that there must be actual notice, or bad faith, to charge the holder for value, there can be no question that the recitals of this note are not sufficient to charge the plaintiff with any equities between the defendants and the payee. *Goodman* v. *Simonds*, 20 How. 343; *Merritt* v. *Duncan, supra; Murray* v. *Lardner*, 2 Wall. 110.

This brings us to the question of fact upon the proof as to notice. It is not pretended that there was anything further to charge plaintiff with notice than that he knew the land lay in Arkansas, and that Gregg was an administrator in Arkansas. It is said by a witness, that the officer of the bank "looked at some papers" at the moment of taking the note before he agreed to take it. What the papers were, whether one thing or another, is not proved, nor is there anything from which to infer that there was in that circumstance a probable knowledge of any fact connected with this note. It may have been a report of some commercial agency showing the standing of defendants, for anything that appeared in proof, or it may have been some other paper totally disconnected with this transaction. All knowledge of the alleged facts are denied

by the officers. But, more than this, the defence is that the consideration of this note has failed by reason of a failure of title and diminution in quantity of the land, and that by the contract of purchase the money was not to be paid until the title was satisfactory. There is not a single circumstance or fact in the proof which even tends to show that the plaintiff had any knowledge that there were such defences to the note, or of the facts upon which they were predicated. It does not follow because the plaintiff knew the note was given for land that it knew the facts as to the title or quantity. The whole argument of defendants is grounded upon the assumption that because the face of the note itself conveyed a knowledge that there was a contract for land, that the land lay in Arkansas, that the payee was an administrator, and because he was pledging a note of $1,500 for a loan of $500 at an enormous interest of 4 per cent. a month, therefore, in the language of the brief, "the bank had notice or knowledge that there was a probable defence to the note."

Now, if the decisions of the supreme court already cited, and many others, mean anything, they forbid, in this court, that any circumstance short of actual knowledge of the facts constituting the defence shall be taken to defeat the holder of his right to recover. The proof showed that in Texas, where this bank resides, the rate of interest was lawful and not unusual, and therefore no imputation of bad faith can be based upon that circumstance. As to the fact that the negotiator of the loan was an administrator, it is wholly immaterial. He may have needed the money for the purposes of the estate. The note may have belonged to him, having been taken in settlement for his commissions, or for a debt, or for a distributive share of the estate, for anything the bank knew to the contrary. He was the payee; the legal title was in him, and the bank need not, under the commercial law of the United States, trouble itself to inquire into the facts.

Any man may pledge a large collateral for a small loan, and they are often out of all proportion to each other. I could see in the proof nothing tending to show that the bank had actual notice of the fact that the title to the land had failed, or the quantity was diminished, or the quality insuffi-

cient, and nothing tending to show bad faith on its part, and if the jury had found otherwise I should, without the least hesitation, have set aside the verdict and granted a new trial; therefore, no error was committed in directing a verdict for the plaintiff. *Orleans* v. *Platt*, 99 U. S. 676. I was the more willing to do this, because, although the result would have been the same, no matter how well founded the defences may have been, I allowed the proof upon the issues to be taken, and was satisfied that if the original payee himself had been suing there was absolutely no defence to the suit in a court of law, however it may have been in a court of equity, on a bill for specific performance or a bill to rescind the contract. I shall not undertake to show the correctness of that opinion, because, strictly, it is not properly in judgment, the plaintiff being entitled to recover as a *bona fide* purchaser for value, without notice of any equities in favor of the makers of the note. I should also have mentioned that, even if the contract for the land referred to in the note had been before the bank, it could have safely, in my opinion, have taken this note.

The facts on which the supposed defects of title and other defences rest were, at that time, unknown even to the defendants themselves. The land contract contained a stipulation that the purchase money was not to be paid until certain deeds were executed. Those deeds had been executed, and after their receipt the defendants paid all the money due, and executed this note and others for the purchase money not due in satisfaction of, and for the purpose of, closing up the agreement about the land. The supposed defects in the deeds, the mistakes in them, and their alleged worthlessness to convey the title were afterwards discovered; indeed, they were discovered after the pledge of this note to the bank. This demonstrates that, at the time this note was negotiated, the defendants themselves had no knowledge of the facts constituting their defences.

I come now to consider a new question, raised since the motion for a new trial was submitted, and never before referred to by counsel or detected by the court. The note sued on reads as follows:

"$1,500.                    MEMPHIS, TENN., June 7, 1875.

"On the fourteenth February, 1876, we promise to pay to
Col. E. P. Gregg, the administrator *de bonis non* of the estate
of James L. Goree, deceased, the sum of $1,500, for value
received, being for a part of the third payment on the Goree
plantation purchased of said Gregg, as per agreement of the
fourteenth February, 1874.        E. M. APPERSON & CO."

It will be observed that the note does not contain the words
"or order," "or bearer," "or assigns," or any equivalent words
of negotiability. It is now said that this omission destroys
the negotiability of this note, and that it cannot be sued upon
in the name of the indorsee. This latter objection, as to the
form of the suit, should have been taken by demurrer or plea
in abatement. But even if so taken it would be untenable
under our statutes. Whether negotiable or not, the note is
assignable, and may be sued on in the name of the assignee.
T. & S. Code, § 1967, and notes; *Wolf* v. *Tyler*, 1 Heisk. 313.
Nor is it a jurisdictional question in this court, for the plead-
ings show that a suit might have been prosecuted in this court
if no assignment had been made, Gregg, the payee, being a
citizen of another state. Wherefore, the jurisdiction does not
depend upon the commercial character of the paper. Act
March 3, 1875, (18 U. S. St. 470.)

If we consult the authorities immediately preceding and
subsequent to the statute of 3 & 4 Anne, *c.* 9, cited in *Muir*
v. *Jenkins*, 2 Cranch C. C. 18, and elsewhere, by the text
writers and annotators, it will be discovered, I think, that
there has been much confusion of opinion as to the precise
effect of that statute on notes omitting the words "or order,"
usually inserted to give the note negotiability, with the gen-
eral result that these or other special words were not essen-
tial, if from the words actually used an intention to issue
negotiable paper were manifested. If, under that statute,
and solely by force of it, a note not containing these or equiv-
alent words could be declared upon in the same manner as a
bill of exchange, according to the custom of merchants, was
entitled to grace, and would support a contract of indorsement,
it does not seem satisfactory to hold that the note is not oth-
erwise fully negotiable. And it will be seen that the judicial

and professional mind never fully recognized the soundness of the position. Yet it is well settled that a bill or note is not negotiable unless it contains these words, or some word of like effect, except where made so by local statute. 1 Am. Lead. Cas. (5th Ed.) 399, top page; 3 Kent, (12th Ed.) 77; 1 Dan'l, Neg. Inst. §§ 104–107. The most direct and satisfactory case I have found is *Gerard* v. *La Corte*, 1 Dall. 194; S. C. 1 Am. Lead. Cas. (5th Ed.) 369.

The unsatisfactory state of the law on this subject induced the state of North Carolina, from which we have derived it, nearly 100 years ago, to enact that "every bill, bond, or note for money, whether sealed or not, and *whether expressed to be payable to order*, or for value received, *or not*, shall be negotiable in the same manner as promissory notes." Act.1786, *c.* 4, § 1; T. & S. Code, § 1957. The act of 1762 (chapter 9) had substantially re-enacted the statute of Anne. T. & S. Code, § 1956. The argument now made is that the only effect of the act of 1786 was to make *bills single* negotiable in the same manner as promissory notes were under the act of 1762, and notes like this *assignable*. This is contrary to the words of the act itself, which says that "every note for money, whether expressed to be payable to order or not, shall be negotiable in the same manner as promissory notes." This is more manifest by reference to the original act itself, which this section of the Code more briefly expresses. Besides, it was further amended by the acts of 1820 (chapter 25) and 1837, (chapter 5,) where it is enacted that upon every such instrument the holder may maintain a joint action against the maker and the indorsers, or a several action against any one or more of the indorsers. T. & S. Code, § 1958. See, also, Id. § 1967.

The cases cited in the notes to these sections of the Code fully sustain this construction, which is too plain to require further notice. This note is, then, fully negotiable by our local statute. It is confidently argued, however, that the federal courts do not recognize or enforce the laws of the states upon the subject of commercial law, and that this question must be decided according to the law merchant and the statute of Anne, and that this act cannot change the

rights of the parties under that law. *Swift* v. *Tyson*, 16 Pet. 1; *Keary* v. *Farmers' & Merchants' Bank*, Id. 89; *Watson* v. *Tarpley*, 18 How. 517; *Dromgoole* v. *Farmers' & Merchants' Bank*, 2 How. 241; 1 Am. Law. Rev. (N. S.) 211, 226.

It is said in *Gregg* v. *Weston*, 7 Biss. 360, that congress meant by "the law merchant," as used in the act of March 13, 1875, the law of contract governing the note, and that the statute of the state enters into and becomes a part of the contract. Whether this would be so as to *restrictive* statutes may be doubtful under the above decisions, particularly *Watson* v. *Tarpley, supra.* I must confess that if the state has power, by legislation, to *enlarge* the commercial law, it does not seem very clear why it should not have power to restrict it in the same way; but there can be no doubt that restrictions are not binding. No case has, however, been cited which holds that a *statute* of a state enlarging the negotiability of bills and notes is not binding on the federal courts. On the contrary, such statutes are frequently enforced. The latest case I find is *Oates* v. *Nat. Bank*, 100 U. S. 239. There are many others. Nearly all the cases either construe the statute of Anne as adopted by the states, or the statutes in lieu of it regulating the subject of negotiable paper.

The result of the authorities seems to be that while the *decisions* of the state courts construing contracts under the general commercial law are not binding as rules of property or rules of construction on the federal courts, nor are state *statutes* which restrict or impair the rights and remedies secured to the citizens of the several states under the general commercial law, or which divest the federal courts of the cognizance of those rights and remedies, those statutes which enlarge and extend the general commercial law will be enforced. It is so in equity cases. While the federal courts uniformly administer the equitable rights and remedies of the general law, and will not permit any restriction by state legislation or judicial decision, they recognize and enforce any new equitable right given by the legislature of the states. *Broderick's Will*, 21 Wall. 503; *Gaines* v. *Fuentes*, 92 U. S. 10, at p. 21.

The motion for a new trial is overruled.