### CITY OF BOSTON v. CROWLEY.

*(Circuit Court, D. Massachusetts. March 21, 1889.)*

1. BRIDGES—LIABILITY FOR DEFECTS.
   The city of Boston purchased the franchise and materials of a bridge at the entrance to its harbor, being empowered so to do by Acts Mass. 1831, c. 71, which provided that the city should always be "liable to keep said bridge and draw in good repair," and afford all necessary accommodations to vessels that have occasion to pass the same. By Acts Mass. 1876, c. 105, the city was authorized to do such acts as it might deem necessary to secure a bridge and draw which should be safe for the purposes of navigation, subject, however, to the provisions of other acts by which the approval of the board of harbor commissioners was required in all work authorized by the legislature of building any bridge, wharf, or draw over tide-waters. The said commissioners granted a license to the city providing for the widening of the said bridge, and the construction of a new draw, which was to be of a certain width. *Held,* that the city was liable for damages done to a vessel by being caught in the draw, the city having failed to maintain the draw of the required width.

2. MUNICIPAL CORPORATIONS—CIVIL LIABILITY FOR TORT.
   In such case a civil action may be brought against the city in the federal courts for the damage done, though no such right of action is conferred by statute.

3. ADMIRALTY—JURISDICTION.
   A court of admiralty has jurisdiction over damage done to a vessel on navigable water by a bridge.

In Admiralty.

*T. M. Babson,* Asst. City Sol., for appellant.

*C. T. & T. H. Russell,* for appellee.

COLT, J. This case is an appeal from a decree of the district court which held that the libel set forth a good cause of action against the city, and that the cause of action was within the admiralty jurisdiction of this court. It is admitted that the allegations of the libel and

amended libel, except as to damages, are true; and it is further agreed that the damages amount to $870. The libelant represents the owners of the schooner Henry S. Culver. The vessel arrived in Boston, January 20, 1887, with a cargo of coal, from Baltimore, to be delivered at the Old Colony wharf, which is situated above the Dover-Street bridge. In proceeding in tow through the bridge the vessel was caught, and stuck in the draw, and was thereby damaged to the amount agreed upon. The schooner's beam was 35 feet. The libelant contends that the city was required by law to maintain a draw 36 feet in the clear, and it is admitted that at this time the draw was not of this required width. The structure was originally known as the "Boston South Bridge," and it was erected by proprietors in 1803. Acts Mass. 1803, c. 113. By the act of incorporation it was provided that "there also shall be made a good and sufficient draw or passage-way, at least thirty feet wide in the channel over which said bridge shall be built, proper for the passing and repassing of vessels." The bridge was maintained as a private property until 1831, when the legislature passed an act authorizing the sale of the franchise and materials to the city of Boston. Acts Mass. 1831, c. 71. One of the provisos in the act was that the "city shall always be held liable to keep said bridge and draw in good repair, and to raise the draw of said bridge, and afford all necessary and proper accommodation to vessels that have occasion to pass the same by night or by day." On April 19, 1832, the city took a deed of the franchise and materials of the bridge for $3,500, under the terms and provisions set forth in the act of the legislature. In 1876, the legislature authorized the city to widen the bridge not exceeding 60 feet, and to construct fenders, guards, and to change the locality of the draw, and to do such other acts as it might deem necessary and convenient to secure a bridge and draw which should safely and conveniently accommodate public travel and navigation, subject however, to the provisions of chapter 432 of the Acts of 1869. Acts Mass. 1876, c. 105. By this act of 1869 the rights of the commonwealth in tide-waters were made subject to the determination and approval of harbor commissioners. Acts Mass. 1869, c. 432. The board of harbor commissioners was created in 1866. By section 4 of the act the approval of the commissioners was required in all work authorized by the legislature of building any bridge, wharf, pier, or draw over tidewaters; and, further, that the work should not be commenced until the plan and mode of performing it should be approved by the commissioners, and that they should have the power to alter plans at their discretion, and to prescribe the direction, limit, and mode of building wharves and other structures to any extent that does not control the legislative grant, and that all such works should be executed under their supervision. Acting under this authority the commissioners, upon an application by the city, granted a license June 21, 1876, which provided that the bridge should be widened to a uniform width of 60 feet; that a new passage-way for vessels should be made nearer the middle of the channel, which should be 36 feet wide in the clear, and at right angles to the center line of the bridge. Acts Mass. 1866, c. 149. The city having

accepted this franchise, with the responsibilities incident thereto, it seems to me that it was manifestly their legal duty to maintain a draw 36 feet wide in the clear.

The position taken by the city, that there was no public duty imposed upon it to maintain a draw 36 feet wide, I think, from a review of the legislation on this subject, is clearly unsound. The city having acquired this franchise, it would be a strange construction to hold that, having built the draw of the requisite width, it was under no duty to maintain it of such width. I cannot assent to such a proposition. The city assumed to do all that the law imposed, and the proper and reasonable interpretation of the law required not only that the draw should be 36 feet, but that it should be maintained at that width.

Another position taken by the city is that the libel does not set forth a maritime tort, and one that is within the jurisdiction of a court of admiralty. This position cannot be maintained in this court. It is settled in the federal courts that a court of admiralty has jurisdiction over damage done to a vessel on navigable water by a bridge or permanent structure. The test is the locality of the thing injured, and not the thing inflicting the injury. *Railroad Co.* v. *Tow-Boat Co.*, 23 How. 209; *The Hine*, 4 Wall. 555; *The Rock Island Bridge*, 6 Wall. 213; *The Plymouth*, 3 Wall. 20; *Atlee* v. *Packet Co.*, 21 Wall. 389. Nor can I agree to the proposition that in the federal courts the only remedy for wrongs of this character against *quasi* corporations such as cities, unless a right of action is conferred by statute, is by indictment. The contrary of this has long been established. *Weightman* v. *Washington*, 1 Black, 39; *Chicago* v. *Robbins*, 2 Black, 418; *Nebraska City* v. *Campbell*, Id. 590; *Barnes* v. *District of Columbia*, 91 U. S. 540; *Evanston* v. *Gunn*, 99 U. S. 660. The question before us is not one of the construction of a state statute, where the federal courts are bound to follow the decision of the highest courts of the state, but it is a question of general municipal or commercial law, and as such this court should follow the decisions of the supreme court of the United States. *Oates* v. *Bank*, 100 U. S. 239; *Watson* v. *Tarpley*, 18 How. 517; *Swift* v. *Tyson*, 16 Pet. 1. Upon consideration I am satisfied that the city of Boston is liable in this form of action, and therefore that the decree of the district court should be affirmed.