958 F.2d 369
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Anthony J. BROWN, Defendant-Appellant.
 No. 91-5317.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 1, 1991.
Decided March 19, 1992.
 
 Appeal from the United States District Court for the Northern District of West Virginia, at Wheeling. Frederick P. Stamp, Jr., District Judge. (CR-90-155)
 Argued: Shirley J. Stanton, Stanton & Stanton, Fairmont, West Virginia, for Appellant. Paul T. Camiletti, Assistant United States Attorney, Wheeling, West Virginia, for Appellee.
 On brief: William A. Kolibash, United States Attorney, Thomas O. Mucklow, Assistant United States Attorney, Wheeling, West Virginia, for Appellee.
 N.D.W.Va.
 AFFIRMED.
 Before K.K. HALL and WILKINSON, Circuit Judges, and HARVEY, Senior United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 In this case, the defendant appeals his convictions and sentence for two cocaine-related offenses. We find no merit in his contentions and affirm the convictions and sentence.
 
 
 2
 * The charges at issue in this case stem from the October 20, 1990 arrest of Anthony J. Brown ("Appellant") in Weirton, West Virginia. A search of a car being driven by Appellant yielded 1.39 grams of a mixture containing cocaine. After a jury trial in the United States District Court for the Northern District of West Virginia, Appellant was convicted of interstate transportation in aid of racketeering in violation of 18 U.S.C. § 1952(a)(3) ("the Travel Act") and of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1). The district court sentenced Appellant to a term of sixteen months imprisonment.
 
 II
 
 3
 Before his arrest in this case, Appellant resided in Ashtabula, Ohio with his ex-wife, Deborah Brown ("Deborah"), their one child, and two other children of Deborah's. Deborah was employed as an exotic dancer by the Midcity Club, a bar in Weirton, where she stayed for several nights every other week.[1] Deborah was a cocaine abuser who testified that she quit her habit on or about October 13, 1990. Appellant, who was unemployed, cared for the three children in Deborah's apartment in Ashtabula when Deborah was working in Weirton.
 
 
 4
 According to the testimony of Deborah, Appellant sold cocaine from her apartment.
 
 
 5
 On several occasions before his arrest, Deborah had asked Appellant to move out of her apartment, but he had refused. In July of 1990, Deborah befriended Robert Swiger, a part-time police officer employed by the Police Department in Amsterdam, Ohio. Deborah had explained to Swiger her concerns arising because Appellant was selling drugs from her apartment. Swiger took her to speak with Deputy Sheriff Gordon Grafton in Steubenville, Ohio. In turn, Grafton called Lieutenant William Beatty of the Weirton Police. Lieutenant Beatty is a member of the federal Narcotics Task Force operating in the Northern District of West Virginia.
 
 
 6
 On October 19, 1990, Appellant, who had previously planned to drive from Ashtabula to Weirton that night, telephoned Deborah at work in Weirton and asked her if "anybody ... wanted him to bring anything out with him." Deborah interpreted Appellant's use of the word "anything" to mean cocaine. Deborah told Appellant that she would call him back.
 
 
 7
 After speaking with Deputy Sheriff Grafton and Lieutenant Beatty, Deborah telephoned Appellant to advise that someone in Weirton wanted to buy cocaine from him. She also advised Appellant what time he should leave Ashtabula and what route he should take into Weirton. Deborah further told Appellant to drive the blue 1974 Datsun which she had recently purchased. Having been informed of these arrangements by Deborah, Lieutenant Beatty set up a surveillance team of uniformed Weirton police officers to await Appellant's arrival. Deborah had informed Lieutenant Beatty that her car was improperly registered and that Appellant did not have a valid driver's license.
 
 
 8
 Uniformed officers spotted the blue Datsun as Appellant drove into Weirton at approximately 3:00 a.m. on October 20, 1990. After following the Datsun for four blocks, Officers Dennis Cain and Michael Fuscardo of the Weirton police pulled the vehicle over on Weirton's Main Street. After determining that Appellant's driver's license had been suspended and that the car was improperly registered, Officers Cain and Fuscardo arrested Appellant and issued him citations for these violations and for speeding. At the direction of Lieutenant Beatty, Officers Cain and Fuscardo impounded the Datsun until its true ownership could be ascertained.
 
 
 9
 Deborah established that she owned the Datsun by showing Lieutenant Beatty a security agreement listing the car as collateral for a loan. Deborah then executed a written consent form permitting Lieutenant Beatty to search her vehicle. The search of the Datsun produced, inter alia, a film canister containing three packages of white powder.[2] Thereafter, Lieutenant Beatty personally delivered the suspected narcotics to the West Virginia State Police in Charleston, West Virginia, where laboratory tests disclosed that the substance in the film canister consisted of 1.39 grams of a mixture containing cocaine.
 
 
 10
 Three days after Appellant's arrest, Deborah and Swiger removed drug paraphernalia and a list of names of purported customers of Appellant from the trunk of another vehicle owned by Deborah, a disabled Cadillac located in Ashtabula. According to Deborah, these items belonged to Appellant, and Deborah and Swiger gave them to law enforcement officials to be used as evidence in the prosecution of Appellant. Thereafter, Deborah and Swiger became romantically involved.
 
 
 11
 On November 14, 1990, a federal grand jury in Elkins, West Virginia returned a two-count indictment charging Appellant with violations of the Travel Act and 21 U.S.C. § 841(a)(1). On February 4 and 5, 1991, Appellant was tried before a jury. The cocaine seized from Deborah's Datsun and also the drug paraphernalia taken from Deborah's disabled Cadillac were admitted into evidence. At the close of the government's case, counsel for Appellant moved pursuant to Rule 29(a), F.R.Crim.P., to dismiss Count 1, which charged Appellant with a violation of the Travel Act. The district court denied this motion. Appellant relied on the defense of entrapment, and over the government's objection, the district court instructed the jury as to this defense.
 
 
 12
 On February 5, 1991, the jury found Appellant guilty on both counts of the indictment. At sentencing, the district court determined under the Sentencing Guidelines that the applicable range for these two offenses was 8 to 14 months imprisonment. However, the district judge sentenced Appellant to a term of 16 months imprisonment. The court departed upward pursuant to § 4A1.3(d) of the Sentencing Guidelines in view of the fact that Appellant was then awaiting sentencing on unrelated cocaine charges in Pennsylvania at the time of his arrest in this case. Appellant here appeals his convictions on both counts and on the sentence imposed.
 
 III
 
 13
 Appellant challenges his convictions on numerous grounds. We have considered each of them, and we affirm.
 
 A.
 
 14
 Appellant first contends that no reasonable jury could have rejected his defense of entrapment. It is well established, however, that it is the defendant in a criminal case who must prove his lack of predisposition to commit the crime charged in order to succeed on his entrapment defense. United States v. Hunt, 749 F.2d 1078, 1085 (4th Cir.1984), cert. denied, 472 U.S. 1018 (1985). In Hunt, we stated that:
 
 
 15
 "[i]t is sufficient if the defendant is of a frame of mind such that once his attention is called to the criminal opportunity, his decision to commit the crime is the product of his own preference and not the product of government persuasion." Predisposition may be found from a defendant's ready response to the inducement offered.
 
 
 16
 Id. (quoting United States v. Williams, 705 F.2d 603, 618 (2nd Cir.), cert. denied, 464 U.S. 1007 (1983)).
 
 
 17
 Applying these principles, we conclude that on the evidence presented at the trial, a jury could reasonably have rejected Appellant's entrapment defense. Trial testimony, and in particular that of Deborah, established that Appellant had been involved in drug trafficking for some time and that he welcomed the opportunity to cross state lines to consummate a potential sale of cocaine.
 
 B.
 
 18
 Appellant next contends that the traffic violations relied upon by the police as justification for stopping the Datsun were a pretext for searching the car for narcotics. This contention is without merit.
 
 
 19
 It is well settled that "[w]hether a Fourth Amendment violation has occurred 'turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time' and not on the officer's actual state of mind at the time the challenged action was taken." Maryland v. Macon, 472 U.S. 463, 470-71 (1985) (quoting Scott v. United States, 436 U.S. 128, 136 (1978)). Moreover, the alleged violation of the Fourth Amendment must be "sufficiently clear that a reasonable official would understand that what he is doing" is illegal. Anderson v. Creighton, 483 U.S. 635, 640 (1987).
 
 
 20
 On the record here, we are satisfied that it was objectively reasonable for the police to have stopped the Datsun driven by Appellant when they did. Law enforcement officials had been told by Deborah that Appellant was driving an improperly registered car and possessed a suspended driver's license. Moreover, Appellant was speeding. Under these circumstances, the officers clearly possessed probable cause to stop the vehicle and charge him with traffic offenses.
 
 C.
 
 21
 Appellant challenges the search of the Datsun on the ground that the security agreement which Deborah showed to Lieutenant Beatty was insufficient to establish her ownership of the vehicle. This contention is clearly without merit. Deborah had told the police that she owned the Datsun, and the document disclosing her apparent ownership of the vehicle was sufficient corroboration of such ownership to vest her with authority to consent to the search. See United States v. Carter, 569 F.2d 801, 803 (4th Cir.1977), cert. denied, 435 U.S. 973 (1978).
 
 D.
 
 22
 Appellant next contends that the district court erred in admitting the evidence taken from Deborah's disabled Cadillac after his arrest. Evidence of prior wrongs or acts, like the evidence at issue here, is admissible pursuant to Rule 404(b), F.R.E., if it is (1) relevant to an issue other than character, (2) necessary, and (3) reliable. See United States v. Rawle, 845 F.2d 1244, 1247 (4th Cir.1988).
 
 
 23
 Applying these criteria, we conclude that the drug paraphernalia and list of customers were admissible at the trial. Deborah testified that these items belonged to Appellant. The evidence was relevant as indicating Appellant's familiarity with cocaine trafficking and was necessary proof that defendant travelled across state lines with an intent to sell cocaine.[3]
 
 E.
 
 24
 Appellant argues that the police conduct in this case was sufficiently outrageous to violate the Due Process Clause. This contention is clearly without merit. The police conduct at issue here "stops far short of violating 'that fundamental fairness ...' mandated by the Due Process Clause of the Fifth Amendment." United States v. Russell, 411 U.S. 423, 431-32 (1973) (quoting Kinsella v. United States ex rel. Singleton, 361 U.S. 234, 246 (1960)). In this case, law enforcement officers did little more than act on a reliable tip in providing Appellant with an opportunity which resulted in the commission of crimes to which he was predisposed.[4]
 
 F.
 
 25
 Appellant advances numerous contentions concerning the effectiveness of his trial counsel. However, a defendant should normally raise claims of ineffective assistance of counsel by way of a motion filed pursuant to 28 U.S.C. § 2255 in the district court rather than on direct appeal, unless it "conclusively appears in the trial record itself" that the defendant was not represented effectively. See United States v. Fisher, 477 F.2d 300, 302 (4th Cir.1973).
 
 
 26
 On the trial record here, it does not conclusively appear to us that Appellant did not receive competent representation from his trial counsel. Appellant's numerous contentions that he received ineffective assistance of counsel are without merit. See United States v. Cecil, 836 F.2d 1431, 1446 (4th Cir.), cert. denied, 487 U.S. 1205 (1988); Goodson v. United States, 564 F.2d 1071, 1072 (4th Cir.1977).
 
 G.
 
 27
 Appellant also argues that the district court erred in denying his motion to dismiss Count 1, which alleged a violation of the Travel Act.[5] Our review of the record convinces us that the government presented sufficient evidence for the jury to have convicted Appellant on the charge brought under § 1952(a)(3). Deborah's uncontradicted testimony was that Appellant had asked her on October 19, 1990 whether he should bring cocaine from Ohio to West Virginia. Under these circumstances, it was not error for the district court to have denied Appellant's motion to dismiss Count 1 at the close of the government's case. See United States v. Rawle, supra at 1248-49.
 
 H.
 
 28
 Finally, Appellant contends that the district court's upward departure pursuant to the Sentencing Guidelines was based on prior offenses which had also been considered in establishing Appellant's criminal history category. Section 4A1.3(d) of the Guidelines suggests consideration of an upward departure where, inter alia, the defendant was "pending ... sentencing on another charge at the time of the instant offense." Departing in accordance with suggestions contained in this Policy Statement is described by the Commission as a guided departure. See U.S.S.G. § 1.4(b) (Nov. 1990). Pursuant to this provision, the district court concluded that an upward departure was merited because, when Appellant committed the instant offenses, he was awaiting sentencing by the Common Pleas Court of Mercer County, Pennsylvania for possession of cocaine and possession of drug paraphernalia. Appellant had been convicted of these offenses in the Pennsylvania court on April 12, 1990, but had not been sentenced in that case when he appeared for sentencing in this case. Appellant had been assigned a Criminal History Category of II, but no criminal history points had been assessed against him because of his Pennsylvania conviction.
 
 
 29
 We conclude that the district court did not err in determining that an upward departure of two months was appropriate in this case. Based on the facts before it, the district court had the discretion to determine pursuant to § 4A1.3(d) that Appellant's criminal history category significantly under-represented the seriousness of his criminal history and the likelihood that he would commit further crimes. Appellant committed these federal crimes at a time when he was awaiting final disposition in Pennsylvania in this other narcotics case.
 
 IV
 
 30
 For the foregoing reasons, we affirm these convictions and the sentence imposed by the district court.
 
 AFFIRMED
 
 
 [1]
 Ashtabula is located in Ohio some miles north of Weirton which is in West Virginia
 
 
 [2]
 Lieutenant Beatty's search also netted a small quantity of marijuana. No federal or state charges involving this marijuana were brought against Appellant
 
 
 [3]
 Appellant has not challenged the reliability of this evidence
 
 
 [4]
 As we observed in United States v. Akinseye, 802 F.2d 740, 743 n. 2 (4th Cir.1986), a defense based on outrageous police conduct closely resembles the defense of entrapment
 
 
 [5]
 In pertinent part, § 1952(a)(3) proscribes interstate travel with intent to "promote, manage, establish, carry on, or facilitate the promotion, management, establishment or carrying on, of any unlawful activity."