HENRY R. HINCKLEY *vs.* MERCHANTS' NATIONAL BANK.

Suffolk.     Nov. 13, 1880. — April 8, 1881.     ENDICOTT, J., did not sit.
FIELD, J., absent.

In an action of replevin for interest coupons, payable to bearer, the case was sub-
mitted on agreed facts, which stated that the bonds, to which the coupons were
then attached, were before maturity stolen from the plaintiff; that after ma-
turity they were bought by a person named in good faith, and passed through
. the hands of several persons named until they came into the possession of the
defendant, and that all these persons were purchasers in good faith and for
value. *Held*, that there was no presumption that the thief had negotiated the
coupons before maturity; and that the plaintiff was entitled to judgment.

REPLEVIN of twenty-nine interest coupons, payable to bearer,
taken from five $1000 bonds of the Union Pacific Railway.
The case was submitted to the Superior Court, and, after judg-
ment for the plaintiff, to this court on appeal, upon an agreed
statement of facts, in substance as follows :

Each coupon had printed on the back the number of that
coupon, and on the face the number of the bond to which it
was originally attached.   The coupons became due on March 1
and September 1 of the years 1876, 1877, and 1878.   Prior to
January 26, 1876, the plaintiff was the owner of the bonds
to which the coupons in suit belonged, and had deposited the
bonds with the coupons attached for safe keeping in a box in
the vault of the Northampton National Bank of Northampton.
They were stolen from this bank in the robbery which took
place there on the night of January 26 and 27, 1876.   The bonds
to which the coupons were attached originally were ordinary
railroad bonds, payable to bearer and due in 1893.

On January 10, 1879, R. Raphael & Sons, bankers, of London,
England, purchased the coupons, each being then detached from
its bond, from Maurice Cohn & Company, money-changers, of
London, who had bought them of their correspondent in Brus-
sels, who had purchased them there on January 7, 1879.   These
purchases were all made in the regular course of business and
in perfect good faith by the parties, all of whom paid full value
for them, and neither of whom had any knowledge or suspicion
that the coupons had ever been stolen, or that there was any-
thing wrong about them.   R. Raphael & Sons sent the coupons
for collection to their agents in New York, who in their turn

sent them to the defendant for collection. The statutes and judicial decisions of England and Belgium may be referred to by either party.

It was further agreed that, if the question whether the plaintiff did or did not use due diligence in giving notice of his loss was material, the case was to stand for trial on that question; otherwise, the court was to render such judgment as the law required.

*J. C. Gray, Jr. & W. C. Loring*, for the plaintiff, cited *Gold* v. *Eddy*, 1 Mass. 1; *Vermilye* v. *Adams Express Co.* 21 Wall. 138; *Cromwell* v. *Sac*, 96 U. S. 51; *Hinckley* v. *Union Pacific Railroad*, 129 Mass. 52.

*M. Williams & C. A. Williams*, for the defendant. The interest coupons in this case have the force of promissory notes payable to bearer. *Spooner* v. *Holmes*, 102 Mass. 501. They were put into circulation by the maker, and the rule applicable to notes having an illegal inception does not apply. Before maturity, they were stolen; and if the thief negotiated them before maturity, the purchaser in good faith took a title good as against the plaintiff, and this title would pass to the purchasers in good faith after maturity. In the absence of all evidence on this point, the presumption is that the thief did negotiate them before maturity. *Ranger* v. *Cary*, 1 Met. 369. *Noxon* v. *De Wolf*, 10 Gray, 343. *Murray* v. *Lardner*, 2 Wall. 110. *Collins* v. *Gilbert*, 94 U. S. 753. *New Orleans Canal Co.* v. *Montgomery*, 95 U. S. 16, 18.

Although one who takes a promissory note overdue takes it subject to all the equities to which it was subject in the hands of him from whom he buys it, yet if the note in this case was negotiated before maturity there would be no equities. *Wheeler* v. *Guild*, 20 Pick. 545. *Pettee* v. *Prout*, 3 Gray, 502. *Fearing* v. *Clark*, 16 Gray, 74. *Smith* v. *Hiscock*, 14 Maine, 449. *Washington National Bank* v. *Texas*, 20 Wall. 72, 89. *Chalmers* v. *Lanion*, 1 Camp. 383. *Fairclough* v. *Pavia*, 9 Exch. 690.

LORD, J. The case stated authorizes either party to offer at the argument the statutes and judicial decisions of England and Belgium. No statute either of England or Belgium has been presented to us. We cannot therefore consider such statutes, if there be such, as a part of the facts of the case; and

so far as any judicial decisions of England have been cited, they are presented merely as authorities bearing upon the questions of law involved in the issue.

Upon the facts stated, the main question presented for our consideration is a very simple one. The larceny of a chattel does not change the property in the chattel. Under what circumstances the property in a stolen chattel may be changed by sale in a market overt where such markets exist, it is immaterial to inquire, for in this Commonwealth it was long ago settled that there are no markets overt. *Dame* v. *Baldwin,* 8 Mass. 518.

By the law merchant, a negotiable note or bill of exchange before maturity stands differently, and a right of property in it may be acquired by an innocent purchaser, who in good faith, without notice, pays value for it. Whether there may be an exception to this rule, it is not necessary to inquire, for in this case every purchaser, as to whom there is any evidence, purchased the coupons after they had become due, and when they had become merely *choses in action.*

The claim of the defendant is, that, inasmuch as the coupons had not matured when the bonds were stolen, it is to be presumed that the thief negotiated them before maturity, so that they were in the market under the protection of the law merchant before maturity; and thus that the true owner had lost his right of property in them. No authority is cited which supports this proposition, and it is not sound in principle. The nearest approach to any decision of this question in any case cited is that, in the absence of evidence, there is no presumption that the holder of a negotiable security acquires his title after it is overdue. Opinion of Swayne, J., in *Washington National Bank* v. *Texas,* 20 Wall. 72, 91. In the case at bar, every known holder received the coupons after maturity, and it is not important to decide whether a previous holder took them before or after maturity, when there is no evidence that there ever was a previous holder, after they were taken from the plaintiff, except the thief. It is never to be assumed that facts exist which do not appear. By the facts agreed, the plaintiff was at one time the absolute owner of the coupons. He remains in law the owner until the contrary appears. Nothing appears in reference

to a claim of title in any other person till a time when it was too late for such person to acquire title; and, in the absence of any evidence tending to show that any other person but the thief had any possession of them until they were purchased as described in the agreed statement, the presumption, which is one of fact, is that they remained in the possession of the thief until thus sold. When they were purchased, they were detached from the bonds, were overdue, and carried to the purchaser notice of every defect which in fact existed; and he took them subject to all the rights which any other than the vendor had to them, and to all the defences which the promisor might make to them.

If we should assume, as contended by the defendant, that the plaintiff must show that these coupons had not been negotiated before maturity, the facts in this case would authorize such conclusion, and would not properly authorize any other. These facts are, that the coupons went into the possession of the thief before maturity; that they went into the possession of the purchasers, as stated in the agreed facts, after maturity. There is no presumption in law upon the subject; the only presumption of fact is that they remained in the hands of the one who took them until some other disposition of them shall be shown. No such change of possession appearing, until they were taken as agreed, the only legitimate inference of fact is that they remained as they were until the change is shown. Any other rule would lead us into the wildest speculation and conjecture as to what facts might exist, of which there is no evidence.

It is not necessary to consider what difference there may be between the obtaining of property by fraud, where the owner intends to part with the property and delivers it into the possession of another, thus voluntarily giving him an apparent title, and the obtaining it by larceny; for there is no pretence that the plaintiff in this case ever voluntarily parted with his possession of the property, or voluntarily allowed it to go into the possession of another party. It was his. It remains his until some facts appear which divest him of his title. No such facts appear, and the direction of the court was therefore correct; and the entry must be                                *Judgment affirmed.*