THE NORTHAMPTON NATIONAL BANK, Respondent, *v.* AMOS M. KIDDER et al., Appellants.

A purchaser for value of negotiable paper after maturity is not a *bona fide* purchaser to the extent of being protected in his purchase against the rightful owner, from whom it has been stolen, unless he has succeeded to the rights of a *bona fide* purchaser before maturity.

The burden is upon the purchaser in such case to show that he is, or has succeeded to the rights of, a *bona fide* purchaser before maturity; there is no presumption that the thief negotiated the paper before it became overdue.

The O. & M. R. R. Co., issued certain mortgage bonds, on their face payable April 1, 1911, with interest semi-annually, upon presentation and surrender of the corresponding interest coupons attached to the bonds. Each bond contained a clause to the effect that, in case of non-payment, when demanded, of any installment of interest, and of its remaining unpaid for six months, or in case of default for six months in making any contribution to the sinking fund stipulated in the bond " the principal shall, without further demand or notice, become due or payable from and after the expiration of six months from the date of such default." In an action for the conversion of two of said bonds a statement of facts was agreed upon to the effect that the bonds in question were stolen from plaintiff in 1876 and were purchased by defendants in 1881; that no interest had been paid thereon for the years 1877, 1878 and 1879, " and the defaults have never been made good," nor had any contribution been made to the sinking fund; that a suit for the foreclosure of the mortgage " because of the above mentioned defaults " had been commenced, which was still pending; that a receiver of the company was appointed in 1876. *Held,* that the bonds at the time of defendants' purchase were overdue; and, as it did not appear they purchased of a *bona fide* holder who purchased before maturity, plaintiff was entitled to recover; that the language of the statement implied

that a demand of payment of interest was made, or that the company had done something which dispensed with its necessity ; but, in any event, a default in making the stipulated payments into the sinking fund was clearly stated.

Also, *held*, that assuming default in the payments of interest or to the sinking fund would not render the principal of the bonds due, without some action on the part of the bondholders or the trustees under the mortgage showing an election to consider it due (as to which *quære*), the action to foreclose based upon both defaults showed such an election.

The plaintiff intervened and became a party plaintiff to the foreclosure suit; some portion of the past due coupons were paid in accordance with a provision contained in the mortgage in case of foreclosure. *Held*. that the acceptance of such payment by the plaintiffs in that action was not a waiver of the election to consider the bonds due.

*Railway Co.* v. *Sprague* (103 U. S. 756); *Morgan* v. *United States* (113 id. 476) distinguished.

(Argued May 13, 1887; decided June 7, 1887.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York in favor of plaintiff, entered upon an order made November 24, 1883, which directed judgment on a verdict directed by the court. (Reported below, 17 J. & S. 338.)

This action was brought to recover damages for the alleged conversion by defendants of two $1,000 bonds belonging to plaintiff.

The material facts are stated in the opinion.

*W. M. Safford* for appellants. Price is the consideration in money paid for the purchase of a thing. (2 Bouv. L. Dict., 369 ; Worcester's Dict.) Sales imports the delivery of a commodity with its title in exchange for a price in current money. (2 Bouv. L. Dict., 492.) The General Term erred in holding that it rested upon defendants to show that the point made by plaintiff, that defendants did not give value for the bonds, was not made upon the trial. (*Hynes* v. *McDermott*, 82 N. Y. 41.) That question should be determined by the pleadings, by the whole record, by what transpired at the trial. (*McKenzie* v. *Ward*, 58 N. Y. 541 ; *People* v.

*Fields,* id. 491.)    The bonds were not due at the time of their purchase by the defendants.    (*Morgan* v. *U. S.,* 113 U. S. 476 ; *Railroad Co.* v. *Sprague,* 103 id. 756.)

*W. G. Peckham* for respondent.    Under a general denial in an answer, defendant has the right to give evidence controverting any facts necessary to be established by plaintiff, but not to prove a defense founded upon new matter. ( *Weaver* v. *Barden,* 49 N. Y. 286.)    In the United States the value of stolen articles can be recovered from any one who takes and converts them.    We have no *market overt.*    Negotiable paper in the hands of an innocent purchaser is an exception to this rule, provided the purchaser is a purchaser before maturity or dishonor, and had no notice of the robbery, and paid full value for the paper.    (Daniels on Neg. Instr. § 1506 ; Edwards on Neg. Instr. § 884 ; *Arents* v. *Comm.,* 18 Grat. 751 , *Belo* v. *Com'rs Forsyth Co.,* 76 N. C. 489 ; *Mayor, etc.* v. *City B'k,* 58 Ga. 584 ; *Hinckley* v. *Mer. Nat. B'k,* 131 Mass. 147 ; *Henderson* v. *Case,* 31 La. An. 216 ; 1 Dill. Mun. Corp. 553 ; *Andrews* v. *Pond,* 13 Pet. 79 ; *Harper* v. *Ely,* 56 Ill. 180 ; *Nickerson* v. *Ruger,* 46 Sup. Ct. 571 ; *Hinckley* v. *Un. P. R. R. Co.,* 129 Mass. 52 ; *People* v. *Supr. Ct. of City of N. Y.,* 19 Wend. 104 : *Vermilye* v. *Ad. Ex. Co.,* 21 Wall. 138, 139, 144.)    The acceptance of the equivalent of some part of the defaulted coupons was no proof of a waiver.    (*Hinckley* v. *Mer. B'k,* 131 Mass. 147 ; *Elliott* v. *Curry,* 1 Phila. R. 281 ; *Ripley* v. *Ætna Ins. Co.,* 30 N. Y. 164 ; *Moore* v. *Mayor, etc.,* 45 Mo. 204, 205 ; Such bonds are not negotiable. (*Chouteau* v. *Allen,* 70 Mo. 339.) The fact that back, defaulted coupons went with bonds, made the bonds dishonored or non-negotiable.    (*Chouteau* v. *Allen,* 70 Mo. 339 ; *First Nat. B'k* v. *Co. Com.,* 14 Minn. 78.) Defendants were not entitled to protection as *bona fide* holders. (*Collins* v. *Gilbert,* 4 Otto, 755 ; Abbott's Trial Ev. 448, § 112 ; *First Nat. B'k* v. *Greene,* 43 N. Y. 298 ; *Kuhns* v. *Gettysburg Nat. B'k,* 68 Penn. 445 ; *Wylie* v. *Speyer,* 62 How. 118 ; *B'k of N. Am.* v. *Kirby,* 108 Mass, 497, 500 ; Bigelow's

Bills and Notes, 539 ; *Porter* v. *Knapp*, 6 Lans. 127 ; *Hill* v. *Northrop*, 4 T. & C 122 ; *Phœnix Ins. Co.* v. *Church*, 81 N. Y. 221 ; *Wills* v *Evans*, 8 N. Y. Week. Dig. 369 ; *Ocean B'k* v. *Carll*, 55 N. Y 441 ; *Farmers' B'k* v. *Noxon*, 45 id. 762, 765 ; *Stevens* v. *Brennan*, 79 id. 258 ; *Comstock* v. *Hier*, 73 id. 269 ; *Millard* v. *Barton*, 13 R. I. 610 ; *Parsons* v. *Jackson*, 99 U. S. 434 ; *Kulb* v. *U. S.*, 18 Ct. of Cl. 560.) All presumptions are for the respondents. (*Oneida B'k* v. *Ontario B'k*, 21 N. Y. 490 ; *Williams* v. *Ins. Co.*, 1 Hilt. 350.)

PECKHAM, J.   In the year 1871, the Ohio and Mississippi Railroad Company issued what was termed a second consolidated mortgage to secure the payment of a large amount of its bonds.   The bonds on their face were payable on the 1st day of April, 1911, with interest in meantime semi-annually at the rate of seven per cent, on the first days of April and October in each year, until the principal was paid, upon the presentation and surrender to the company of the coupon or interest warrant attached for each installment of interest as it became due.   Each bond contained this clause : " In case of the non-payment of the interest for any half year when demanded, and the same remaining unpaid for six months, and likewise in case of default for six months in the stipulated contribution to the sinking fund hereinafter referred to, the principal shall, without further demand or notice, become due and payable from and after the expiration of six months from the date of such default, with interest then accrued and in arrear."   The bonds in referring to the mortgage which secured their payment, also contained a statement as follows : " And said mortgage also provides a sinking fund for the ultimate redemption of said bonds, commencing with payments into the sinking fund at the rate of $20,000 a year, and so graded and regulated as to provide for taking up the whole amount of the bonds before their maturity."

By a written statement contained in the case and headed "facts" (the case containing none of the evidence given on the trial), it appears that the plaintiff was, on the 26th day of

January, 1876, the owner of two $1,000 second mortgage bonds of the issue above described, and on that day they were stolen from it by masked burglars. It further appears in the statement that no interest was paid on any of the second mortgage bonds for the years 1877, 1878 and April, 1879, nor was any contribution made to the sinking fund during the period from 1876 to December, 1882, inclusive, " and the defaults have never been made good for any of the payments which became due from 1876 to 1882." A foreclosure of the second consolidated mortgage (the statement continues), " because of the above mentioned defaults in the interest and sinking funds on the bonds in suit, was begun shortly before the appointment of receivers who were appointed on the 17th of November, 1876." At the time of the trial of this action (December, 1882), this foreclosure suit was still pending and had been from the time of its commencement. The defendants, on the 28th of April, 1881, had orders to buy $2,000 of these bonds, and they purchased the bonds in question and acted through brokers in their purchase. Whether they paid a valuable consideration for the bonds or not is a disputed inference from the language used in the statement of facts, and the General Term held that the fact of such purchase for value did not appear, and upon that ground gave judgment for the plaintiff on a verdict directed for it at the Circuit, subject to the opinion of the General Term. Whether the court was right in that construction of the meaning of the language used is not important in the view we take of the case.

The bonds, when they were purchased by defendants in April, 1881, were overdue, and had thus ceased to be negotiable in the sense which frees the transaction from all inquiry into the rights of antecedent holders. (*Vermilye* v. *Adams Express Co.*, 21 Wall. 138, at 145 ; *Morgan* v. *United States*, 113 U. S. 476, 499 ; *Hinckley* v. *Merchants' Nat. Bank*, 131 Mass. 147.) After maturity a purchaser for value is not a *bona fide* purchaser to the extent of being protected in his purchase (unless he succeeds to the rights of such a holder who became such before maturity), for the fact of non-pay-

ment discredits the instrument' and deprives it of any immunity which, before maturity, was secured to it in favor of a *bona fide* purchaser for value, without actual notice of any defect either in the obligation or the title.

The defendants' counsel, however, very strenuously denies the statement that the bonds were overdue when purchased. He says that no legal demand of the interest on the coupons was ever proved, and that by the terms of the bonds the interest must remain unpaid for six months after demand before the principal could become due. The language heretofore quoted, which ' was used in the statement, implies, however, that a demand was made, or that the company had done that which dispensed with its necessity.

In a legal document of such precision as a statement of facts should be, and is, where the vital point of the case rests upon the language used in this regard, the word "defaults" would never be used to describe a mere failure to pay money as interest on coupons which had not been presented, or any demand of payment made, or any action taken by the company to dispense with such demand. The word means, as thus used, the failure or default of the company to do that which it was under a legal obligation to do, and such default may have occurred by a refusal to pay any coupons upon the presentation of a part only, and by the action of the company in publicly announcing its inability to pay and its purpose to default as to all its legal obligations of this nature. This meaning of the word is rendered still plainer when, in the same statement, there is contained the further fact that the defaults have never been made good for *any* of the payments which became due from 1876 to 1882, and that the fore-closure of the second mortgage was commenced because of the defaults in the payment of the interest and of the amount due the sinking fund. It is idle to claim that such language would be used in regard to any fact other than a legal default consequent upon a proper demand, or else in regard to some action which dispensed with its necessity and was equivalent to a refusal to pay upon demand. Under no other circum-

stances could it be justly or truly said that the company had made any default in the full performance of all its obligations as to payments, and under no other circumstances would such a word be used in a legal document of this character.

Two cases were cited by the counsel for the appellants to show that a default in the payment of interest did not make the bonds overdue. They were *Railway Company* v. *Sprague* (103 U. S. 756) and *Morgan et al.* v. *United States* (113 id. 476). Both of these cases have been already cited upon another proposition. Neither of them sustains this claim. In the first the condition was that the principal of the bond should become due if an installment of interest due should remain unpaid for six months after a demand should be made for the payment of the same. There was no evidence that any demand had ever been made, and it was not stated that the company had made any default in the payment of interest, and the court held that the mere presence on the bond of a past due and unpaid coupon was not evidence of a default. In regard to such coupons, the court said : " Coupons are separable obligations for the interest payable on demand. It constantly arises that they are not demanded for weeks and months, and sometimes years, after they are due. As they bear interest after maturity, it will frequently happen that the owner of a bond who holds it as an investment will keep the coupon for the same purpose." In the present case the statement that there had been a default, for which a fore= closure was commenced and receivers appointed, is, as has been said, equivalent to a statement that the company had been guilty of such a violation of the stipulations of the bond as made the principal due at once.

In the second case the court held that a so-called five-twenty government bond which had been called for payment after the lapse of five years, and a day named for its payment, after which interest would cease, was not an overdue bond ; that the penalty for the non-presentment for payment by the day appointed was only the loss of interest from that time, and that the bond was not overdue within the principle per-

mitting inquiry regarding overdue paper as to its origin or title in the hands of a *bona fide* purchaser for value, and without actual notice until after the lapse of the twenty years named in the bond for its unconditional payment. It was stated that there was a distinction to be observed between a bond which was redeemable after five and within twenty years, at the discretion of the government, and one which was payable absolutely at a certain time, and that in the case then before the court the only penalty prescribed for the non-presentment for payment on or before the day named in the call was the loss of future interest. In no other way was the original contract altered, and no other disability was imposed upon the holder, nor any other immunity taken from him, and the bond continued to stand upon its statutory basis as a bond redeemable at the treasury on demand, without interest after the maturity of the call, payable according to its original terms, and not overdue in the commercial sense till after the day of unconditional payment.

In the case at bar when the defaults had occurred, and the condition of the bond had therefore attached, the principal, by the very terms of the bond, became due at once.

Again, there can be no doubt as to there having been a default arising from the non-payment of the promised amounts into the sinking fund as provided for in the bonds. This failure is stated in plain language in the case. It cannot even be argued here (assuming the argument would be sound, which we do not decide) that the mere failure to pay, either the interest or the promised amount into the sinking fund, would not in and of itself, render the principal of the bonds due without some action looking to that end on the part of the bondholders or the trustees under the mortgage, because it was simply a privilege extended to them to so consider it at their election, which, until some action looking to its enforcement should be taken on their part, rested in abeyance and might be waived. The answer is there was an election in this case. The action to foreclose the mortgage, based upon both these defaults, was such election, and the defend-

ants, when they purchased the bonds, knew that the company was in the hands of receivers.

The case, therefore, stands in this condition:   The plaintiff proved that in January, 1876, it was the owner of these bonds and at that time they were stolen from it by means of a burglary.   The thief, of course, got no title to them.   The ownership and the theft of the bonds having been proved (assuming them to be commercial paper), the *onus* was cast upon the defendants to show that they were, or had succeeded to the rights of *bona fide* holders.   (*Bank of Cortland* v. *Green*, 43 N. Y. 298; *Farmers' Nat. Bk.* v. *Noxon*, 45 id. 762; *Bank of N. Y.* v. *Carll*, 55 id. 440; per CHURCH, Ch. J.)   They were not *bona fide* holders for they purchased paper which was overdue at the time of their purchase, and, if it be conceded that purchasers of such paper can succeed to the rights of *bona fide* holders (See *Miller* v. *Talcott*, 54 N. Y. 114), yet there is no proof of that nature in this case, as there is no proof that any holder succeeding the thief acquired the bonds before their dishoner as overdue paper, and there is no presumption to be indulged in, in favor of defendants, that the thief negotiated the bonds before they became over-due.   This precise question as to the presumption in said case has been thus decided in Massachusetts, and, as we believe, correctly.   (*Hinckley* v. *Merchants' Nat. Bk.*, 131 Mass. 147.)

Lastly, we think there was no evidence of any legal waiver of the election to consider the principal of the bonds due. Some portion of past due coupons, it seems, was paid to the plaintiffs in the foreclosure suit (in which this plaintiff had intervened and become a party plaintiff), but it seems that it was paid in accordance with a provision contained in the mortgage in case of foreclosure thereof, and evidently was a payment made in recognition of the legality of the foreclosure proceedings, and the receipt of the money was not in any manner intended as a waiver of the election once and con-clusively made by the bondholders or their trustees.   At all events there was no pretense of a waiver of the default as to the payment into the sinking fund.

The defendants have failed to show any defense to plaintiffs demand, and the judgment in its favor must be affirmed, with costs.

All concur.

Judgment affirmed.