## In re HOPPER-MORGAN CO.

### (District Court, N. D. New York. June 7, 1907.)

**1. COURTS—FEDERAL COURTS—FOLLOWING STATE DECISIONS.**

On questions of general commercial law the courts of the United States are bound by the decisions of state courts only when such decisions are by the highest court of the state and are based either on a statute or a long-established local custom having the force of a statute.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 979.

Conclusiveness of judgment between federal and state courts, see notes to Kansas City, Ft. S. & M. Ry. Co. v. Morgan, 21 C. C. A. 478, and Union & Planters' Bank v. City of Memphis, 49 C. C. A. 468.]

**2. BILLS AND NOTES—ACCOMMODATION NOTE—HOLDER FOR VALUE.**

Under section 51 of the negotiable instruments law of New York (Laws 1897, p. 727, c. 612), which provides that "value is any consideration sufficient to support a simple contract," and that "an antecedent or pre-existing debt constitutes value," an indorsee of an accommodation note, which took the same from another indorsee before maturity, in good faith, and without notice of any defense, as collateral security for an antecedent debt of the immediate indorser, is a holder for value, or occupies the position of a holder for value, and may enforce the note against the maker, although it surrendered no right in respect to the original debt, and although the note was invalid and illegal in its inception.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 7, Bills and Notes, §§ 922, 935.]

In Bankruptcy. Review of order of Joseph B. Atwell, Esq., referee in bankruptcy, disallowing the claim of First National Bank of

Northampton Mass., on a note of $5,000 made by said bankrupt, Hopper-Morgan Company, dated the 4th day of April, 1905, and which note was given without consideration, as an accommodation, and not in the business of said maker, a corporation.

Lansing & Lansing, for claimant.

Brown, Carlisle & McCartin, for trustee.

RAY, District Judge. At the times mentioned the bankrupt, Hopper-Morgan Company, was a business corporation organized and existing under the laws of the state of New York, engaged in the business of making and selling writing tablets and other similar paper products. It had its principal office and factory in the city of Watertown, N. Y., but at one time maintained an office in the city of New York, where Roger Morgan, its treasurer, resided and had an office at the times in question. The authorized capital stock of the company was $200,000, only $150,000 of which was issued. Roger Morgan and the estate of Elisha Morgan, his father, owned all the stock, except 50 shares owned by one Bertrand Hopper, and 1 share owned or held by one E. H. Bridge. Said Roger Morgan was also the general manager of the corporation and had sole charge of its finances. Said E. H. Bridge was the assistant treasurer, and resided at Watertown, and managed the company, and drew checks, and discounted the regular paper of the company, which he had authority to do. One D. H. Morgan was the president of the company but he took no interest or part in its management. The claimant, First National Bank of Northampton Mass., was and is a duly organized national bank doing business at Northampton, Mass. One Kneeland was its cashier. The Brattleboro Manufacturing Company was a manufacturing corporation located and doing business at Brattleboro, state of Vermont. Charles H. Thompson was its president. He and his family practically owned the company. This Brattleboro Company was a regular customer of the First National Bank of Northampton. Kneeland and Thompson knew each other well. From May to October the Hopper-Morgan Company was a borrower, and known to be such. Its business was successful, and it was well rated with Dun & Co. and Bradstreet, and at the time the notes to be mentioned were given it was a solvent concern. In 1905, and shortly before the issuing of the note in question, this company had been attempting to raise money for its business purposes.

In March, 1905, one Edward E. Trautwine proposed to said Roger Morgan, treasurer and manager of Hopper-Morgan Company, that he issue notes of said corporation for accommodation in the sum of $50,000, and that for their use he would pay 3 per cent., and would also procure to be discounted $10,000 of the paper of the company at 6 per cent. and give receipts for the $50,000 of notes from some reliable concern. Morgan was then endeavoring to raise funds to carry his company through the summer of 1905. March 29th Morgan made and issued $50,000 of the notes of the company and delivered them to Trautwine under the said proposition. Later, and on or about April 4, 1905, Morgan made and issued another batch of these notes, amounting to $50,000, under an agreement to receive 3 per cent. for the use of

them. All of the notes were issued under an agreement that they were not to be a charge against the Hopper-Morgan Company and should be returned 10 days before maturity. Later on other parties appeared in connection with the transactions, and Morgan issued other notes of the company, in all about $160,000. He was paid $3,000 for this loan of the credit of the company. About $1,500 of this he applied on payment of a note of the company. In the fore part of April Morgan was aware that such part of the paper as was issued for regular discount could not be discounted, and he also learned that some of the notes had been sold and negotiated in violation of the agreement. In April Morgan received inquiries from certain parties who had purchased some of this paper as to the validity of the paper, and he stated in reply that it was good and would be paid at maturity. Neither Morgan nor the company took any steps to prevent this use of this paper. Bridge, the assistant treasurer, knew of the issue of the paper, but not all the facts and circumstances. Originally the notes issued were for $5,000 and $2,500 each, but later notes for a smaller amount were issued. Morgan knew that all the paper so issued was to be used outside the state of New York. It was all made in New York and payable in New York state.

On or about April 4, 1905, said Charles H. Thompson, the said president·of the said Brattleboro Manufacturing Comany, took to the said National Bank of Northampton one of said notes for $2,500, indorsed by said Brattleboro Company and by Thompson individually, and presented it for discount. Kneeland, the cashier, looked up the rating of the maker, discounted the note, and placed the proceeds to the credit of the Brattleboro Company, which company subsequently drew out and used the proceeds. No question is made as to this note. June 10 or 12, 1905, said Thompson took the $5,000 note, in question here, to the said National Bank of Northampton, and requested the bank to discount it, which the bank refused to do. The Brattleboro Manufacturing Company had then overdrawn its account with the National Bank of Northampton $1,483.21, and was also owing it for money advanced on a note for $3,000 made by Van Houten Bros. Jewelry Company, dated February 24, 1905, payable six months after date, and indorsed by said jewelry company, the Brattleboro Company, Elizabeth C. Thompson, and said Charles H. Thompson, and was also owing said bank a note of $1,800 made by the Brattleboro Company and indorsed by said Helen E. Thompson. Thompson stated to the bank that the Liberty National Bank in New York offered to discount the said $5,000 note, if his company (the Brattleboro Company) would open an account with them. He also stated he desired to discount the note and get a credit of $2,200 to make the account of the Brattleboro Company with the National Bank of Northampton good. The Northampton Bank did not discount the note. This $5,000 note reads as follows:

"$5,000. Watertown, **N. Y.**, April 4, 1905.

"Four months after date we promise to pay to the order of ourselves five thousand dollars at Liberty National Bank, N. Y. City, value received.
"[Signed] Hopper-Morgan Company,
"Roger Morgan, Treasurer."

It was indorsed as follows:

"Hopper-Morgan Co., Roger Morgan, Treas.
"Brattleboro Mfg. Co., Chas H. Thompson, Pres.
"Chas. H. Thompson."

It was one of the batch of $50,000 issued April 4, 1905, by Morgan as before stated. It does not appear that the National Bank of Northampton made any inquiries as to the purpose for which the note was made, or as to how the Brattleboro Company came by it. It does not affirmatively appear that the said bank had any notice of any infirmity in the note. It does not affirmatively appear how the Brattleboro Company or Thompson came by it. It does not affirmatively appear that it paid value or took it in due course of business. It does not affirmatively appear said company did not. On the 14th day of June, 1905, said Charles H. Thompson reappeared at said Northampton bank with said $5,000 note, and that bank sent it to its correspondent in New York, with a request that it discount the note. This correspondent did not discount it. Thereupon, without inquiry, so far as appears, as to the purpose for which the note was given, said National Bank of Northampton took the said $5,000 note as collateral security for such overdraft of $1,483.21, the money advanced on said Van Houten Bros. Jewelry Company note and said note made by the Brattleboro Company and indorsed by Helen E. Thompson. It was not taken or accepted in payment of such indebtedness to the bank or of any part of same. Kneeland, the cashier, testified the bank took it largely on the strength of the Brattleboro Manufacturing Company. These items of indebtedness of the Brattleboro Company to the National Bank of Northampton still remain unpaid, except as follows:

On the 13th day of October, 1905, the said bank sold the said Van Houten Bros. Jewelry Company note to the Vermont National Bank of Brattleboro, Vt., for $3,026.50, the face of the note and interest, and gave to said bank the following written agreement in reference to said $5,000 note of the Hopper-Morgan Company, viz.:

"Northampton, Mass., Oct. 14th, 1905.

"In consideration that the Vermont Nat. Bank of Brattleboro, Vermont, has agreed to buy a promissory note of Van Houten Bros. Jewelry Co. in the sum of $3,000, bearing date Feb. 24th, 1905, and payable six months after date to order of ourselves and indorsed by Van Houten Bros. Jewelry Co., Brattleboro Mfg. Co., Elizabeth C. Thompson, and Chas. H. Thompson, this bank agrees as to the note of Hopper-Morgan Co., $5,000, which is deposited with it as collateral, that if it collects any part thereof it will, after applying the proceeds to the following claims, as to which it is held as collateral, namely, $1,483.21 and interest, and note $1,800 made by the Brattleboro Mfg. Co. and all expenses of collection, pay to the Vermont Nat. Bank of Brattleboro the surplus, if any.

"[Signed]                    The First N. Bank of Northampton,
                                        "F. N. Kneeland, Cash."

So far as appears, the Vermont National Bank made no inquiries as to the purpose for which or consideration on which said note was given. It is clear that the claimant, First National Bank of Northampton, never parted with any value for such note of $5,000, or surrendered any right, or postponed any right of action, or extended credit on the faith

of it. It took it as collateral security merely for an old indebtedness and so holds same.

Section 51 of the negotiable instruments law of the state of New York (Laws 1897, p. 727, c. 612), provides as follows:

"Value is any consideration sufficient to support a simple contract. An antecedent or pre-existing debt constitutes value, and is deemed such whether the instrument is payable on demand or at a future time."

Does this mean that a person who takes the note of a third person as collateral security merely for a pre-existing debt, not in payment thereof, and holds and retains such pre-existing debt, and who does not extend time of payment, or part with any consideration, or surrender any right, and who has no notice of any infirmity in the note taken as collateral, become a holder thereof in good faith and for value? He holds in good faith, for he has no notice of any infirmity in the note. If the note is taken in payment of the pre-existing debt, and that debt is surrendered or canceled, then, under the statute quoted, the "antecedent or pre-existing debt constitutes value," and the holder is a holder in good faith and for value. The contention is that, while a pre-existing or antecedent debt constitutes value, it is only when such debt is canceled or surrendered, or its payment postponed, that the statute applies. I do not think this contention is exactly correct.

The law of the state of New York is that a note made as the one in question was is only valid and enforceable in the hands of a holder in good faith and for value. This means, it is said, the absence of knowledge of infirmity in the note and the payment of or parting with some valuable right or thing for the note. That a debt owing to a person is a thing of value cannot be questioned, and its age is immaterial, provided remedy for collection is not barred and the payor is solvent. This always has been law, and I trust always will be, although some would wipe out all debts and obligations to pay just debts. The surrender and cancellation of an antecedent or pre-existing debt has in New York always been regarded as the paying or giving of value for the note of a third person. Section 51 of the negotiable instruments law is declaratory of the law as it existed in New York prior to its enactment. Section 52 of the same act declares "what constitutes holder for value." It says:

"Where value has at any time been given for the instrument, the holder is deemed a holder for value in respect to all parties who became such prior to that time."

Here is a distinct declaration that "value" must have been "given for the instrument"; that is, going back to section 51, if the value consisted in an antecedent or pre-existing debt, it must have been given, given up or surrendered, or canceled, as a consideration for the instrument or note. That a person who merely takes the note of a third person as collateral security for the payment of a pre-existing debt due him, and who in consideration of such collateral gives up nothing, surrenders nothing, does not extend payment, or discontinue collection, etc., has "given" anything for the "instrument," the note, is a proposition my mind cannot comprehend. He has not paid or parted with anything. He has not agreed to pay or part with anything. He has

surrendered no right. He has not extended time of payment. He has neither foreborne nor agreed to forbear anything. If, however, such holder assumes any duty or obligation, he becomes a holder for value, or occupies the position of a holder for value, as we shall see later. By section 54 of the same act it is provided:

"Absence or failure of consideration is matter of defense as against any person not a holder in due course."

Section 91 defines a holder in due course, viz.:

"Sec. 91. What constitutes a holder in due course.—A holder in due course is a holder who has taken the instrument under the following conditions:

"1. That it is complete and regular upon its face;

"2. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

"3. That he took it in good faith and for value;

"4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

This question has been three times passed upon by the Appellate Division of the Supreme Court of the state of New York; the holding in each case being that, to cut off the defense that the note was illegally issued without consideration and has been wrongfully diverted, the holder must show, if the consideration given by him was an antecedent or pre-existing debt, that he surrendered or canceled such debt. Sutherland v. Mead, 80 App. Div. 103, 80 N. Y. Supp. 504; Roseman v. Mahony, 86 App. Div. 377, 83 N. Y. Supp. 749; Bank of America v. Waydell, 103 App. Div. 25, 33, 92 N. Y. Supp. 666, affirmed, not passing on this point, 187 N. Y. 115, 79 N. E. 857.

In Sutherland v. Mead, supra, the court said:

"It is said, however, that the negotiable instruments law has changed the rule in respect to what constitutes consideration for a promissory note, it being claimed that a pre-existing indebtedness is a good consideration and renders the holder thereof a holder for value of a note taken as security therefor, as against accommodation indorsers, even though the note has been fraudulently diverted from the purpose for which it was given and the indorsers have received no value. Since 1822, when Coddington v. Bay, 20 Johns. (N. Y.) 637, 11 Am. Dec. 342, was decided, it has been the settled law of this state that accommodation makers or indorsers of negotiable paper were not liable to a holder thereof where the same had been fraudulently diverted from the purpose for which it was made or the indorsement given and the holder had received it solely as collateral security for an antecedent debt. Comstock v. Hier, 73 N. Y. 269, 29 Am. Rep. 142. In other words, the surety has the right to impose such liability upon his obligation as he sees fit, and he is not to be made liable outside the terms of his engagement in the case of negotiable paper, except for the benefit of a bona fide holder who parted with value and was misled to his prejudice. United States Nat. Bank v. Ewing, 131 N. Y. 506, 30 N. E. 501, 27 Am. St. Rep. 615. Whatever may have been the rule with respect to this question in other jurisdictions, it has been the law of this state, uniformly enforced during this period of time, and still is the law unless the negotiable instruments law (Laws 1897, c. 612) has changed the same. Section 51 of such act provides: 'Value is any consideration sufficient to support a simple contract. An antecedent or pre-existing debt constitutes value; and is deemed such whether the instrument is payable on demand or at a future time.' Standing alone, this provision has not changed the existing law. It was always the law of this state that a consideration sufficient to support a simple contract constituted a good consideration for the instrument. This declaration, therefore, upon this subject, added nothing whatever to the law as it existed and had existed from time

immemorial. So, also, an antecedent or pre-existing debt constituted value, and was sufficient in consideration of an instrument, either negotiable or otherwise, as between the parties thereto. Moreover, it was always the law that the actual payment and discharge of a pre-existing debt constituted the same a valuable consideration for the transfer of commercial paper and shut off prior equities existing against it. Such was the rule announced in Coddington v. Bay, supra, and has since been enforced by the courts of this state. Mayer v. Heidelbach, 123 N. Y. 332, 25 N. E. 416, 9 L. R. A. 850; Spring Brook Chemical Co. v. Dunn, 39 App. Div. 130, 57 N. Y. Supp. 100; Blair v. Hagemeyer, 26 App. Div. 219, 49 N. Y. Supp. 965. There is nothing contained in this enactment, therefore which has changed the rule of law respecting the consideration of commercial paper as it had previously existed, and the language of the statute is quite insufficient to annul the rule which has obtained with respect to the fraudulent diversion of commercial paper as against accommodation indorsers thereon. Such rule, therefore, cannot be considered as changed, unless it be by virtue of the other provisions of the statute, showing that such defense is cut off and indicating a clear intent to change the rule. * * * We are not to impute to the Legislature an intent to change a rule of law which has existed in uniform course of enforcement for over three-quarters of a century without a clear and unequivocal expression so to do. The rules of law which have been laid down in England covering such question or the reasons assigned for a different rule in other jurisdictions in this country, do not furnish controlling reasons for changing the law of this state, so as to bring it into harmony with such views, in face of the fact that in the commercial center of this country these rules have been applied for this length of time without damage to business interests or harm to commercial usages, and during its operation a period of commercial activity and prosperity has existed heretofore unknown in the world's history. We may take judicial notice that the commission appointed to revise and codify the statutes was created in the main to codify existing laws, and not make new rules; and certainly it was never intended that settled usages in respect of commercial paper, founded upon decisions covering a period of 80 years and uniform in application, should be overthrown in the construction of ambiguous and obscure expressions used by such a body."

### In Bank of America v. Waydell, supra, the court said:

"The existence of the indebtedness upon the part of A. Ives & Sons did not constitute the plaintiff a holder of the draft for value. It is conceded that such was the rule under the authority of Coddington v. Bay, 20 Johns. (N. Y.) 637, 11 Am. Dec. 342. The claim, however, is now made that section 51 of the negotiable instruments law (Laws 1897, c. 612) has changed the rule in this respect, and that such indebtedness made the bank a holder of this draft for value. Upon such proposition this court has decided otherwise (Sutherland v. Mead, 80 App. Div. 103, 80 N. Y. Supp. 504), and also the Second Department (Roseman v. Mahony, 86 App. Div. 377, 83 N. Y. Supp. 749). It is not needful that we extend the discussion of this subject beyond that contained in the cases to which reference is made. In the present case nothing was discharged, nor did the bank have the power to make use of the draft prior to collection, either by crediting it to Ives & Sons or making application of it upon their indebtedness. The mere possession of it in their hands under this limited right could not constitute the indebtedness of Ives & Sons a valuable consideration, so as to enable the bank to retain it as against the true owner. Until there is some discharge or dealing with the pre-existing indebtedness, it cannot become a consideration for the retention or enforcement of commercial paper as against the true owner."

### In Roseman v. Mahony, supra, the court said:

"By section 51 of the negotiable instruments law (Laws 1897, c. 612) it is provided that 'an antecedent or pre-existing debt constitutes value.' But the holder of the note must give up the debt either wholly or qualifiedly in order to constitute consideration. He must part with something—if not with the debt, at least with the right to sue upon it for some determinate period.

The taking of the debtor's note raises no presumption that it is in payment of the debt, and there was here no circumstance or suggestion that the plaintiff extended the time for payment, or did any other act which would have prevented him from surrendering the note and resorting to the original indebtedness."

In New York the rule has been stated that a person receiving negotiable paper as security merely for an antecedent or pre-existing debt, without notice of facts which would vitiate such paper as between the prior holders thereof, is not a holder for value. Coddington v. Bay, 20 Johns. (N. Y.) 637, 11 Am. Dec. 342; Phœnix Ins. Co. v. Church, 81 N. Y. 218, 37 Am. Rep. 494; Farrington v. Frankfort Bank, 24 Barb. (N. Y.) 554; U. S. Nat. Bank v. Ewing, 131 N. Y. 506, 30 N. E. 501, 27 Am. St. Rep. 615; Moore v. Ryder, 65 N. Y. 438; Benjamin v. Rogers, 126 N. Y. 60, 26 N. E. 970. Many other cases held the same.

There is an exception to this in the case of Grocers' Bank v. Penfield, 69 N. Y. 502, 25 Am. Rep. 231, where it was held that a promissory note made for the accommodation of the payee, but without restriction as to its use, was good and collectible in the hands of one who took it in good faith as collateral security for an antecedent debt of the payee and indorser. In that case the court held:

"Whatever confusion may have existed upon the point, we think that we may now safely say, in the language of Prof. Parsons (1 Parsons on Notes and Bills, 296), that it is universally conceded that the holder of an accommodation note, without restriction as to the mode of using it, may transfer it either in payment or as collateral security for an antecedent debt, and the maker will have no defense. See, also, Story on Bills, § 192, note 'm,' and Story on Notes, § 195, and authorities cited. The existing debt is a sufficient consideration for the transfer, and no new consideration need be shown. It is only where the note has been diverted from the purpose for which it was intrusted to the payee, or some other equity exists in favor of the maker, that it is necessary that the holder should have parted with value on the faith of the note, in order to cut off such equity of the maker. Cole v. Saulpaugh, 48 Barb. (N. Y.) 104; Bank of Rutland v. Buck, 5 Wend. (N. Y.) 66; Lathrop v. Morris, 3 Sandf. (N. Y.) 7. It has been held by high authority that an antecedent debt is sufficient, even in the case of a note fraudulently diverted, to constitute the holder a bona fide holder for value, without any extension of time, or surrender of securities, or other new consideration. Swift v. Tyson, 16 Pet. 1, 10 L. Ed. 865. But in this state that doctrine does not prevail. Stalker v. McDonald, 6 Hill (N. Y.) 93, 40 Am. Dec. 389. The leading authorities upon the subject are reviewed in the case of Maitland v. Citizens' Bank, 40 Md. 540, 70 Am. Rep. 620. Whatever difference of opinion may have existed as to the case of a note diverted or fraudulently put in circulation, it must be regarded as settled that an indorsee of a negotiable note made for the accommodation of the indorser, but without restriction as to its use, taking the note in good faith as collateral security for an antecedent debt, and without other consideration, is entitled to the position of a holder for value, and not affected by the defense of want of consideration to the maker."

In the case of Continental National Bank v. Townsend, 87 N. Y. 8, the court held:

"The principal question on this appeal has been decided in this court adversely to the views of the appellant. In Grocers' Bank v. Penfield, 69 N. Y. 502, 25 Am. Rep. 231, we determined, after a very full examination of the authorities, that where a promissory note is made for the accommodation of the payee, but without restriction as to its use, an indorsee taking it as col-

lateral security for an antecedent debt of the indorser, without other consideration, but in good faith and before dishonor, occupies the position of a holder for value and is protected as such. That doctrine decides this case, unless there be something in the further point sought to be raised out of the fact that the note was transferred on the last day of grace."

In both these cases, while the court does not hold that one taking an accommodation note in good faith as collateral security, merely, for an antecedent or pre-existing debt, is a holder for value, it does hold that, if there was no restriction on the use of the note, one who takes it as collateral security for the payment of an antecedent or pre-existing debt "occupies the position of a holder for value and is protected as such."

Under these cases, as the claimant bank held without notice of defect and took the note as collateral, it is protected unless the note was diverted; that is, unless there was a restriction on its use and it was used for some other purpose. This note, with others made at the same time, was made to enable the person to whom it was delivered to raise money. It was expected that he would negotiate it and the others in some way. True, he agreed to return them before maturity and failed so to do. This was in violation of his contract, but he did not obtain them by fraud, and there was no limitation on their use in negotiating them, except he was to take them up, if negotiated, and return them before due. It was also agreed by the person who took them that they should impose no liability on the maker. But the maker well knew they would impose a liability on the maker if they passed to the hands of a bona fide holder for value. They were accommodation notes, made and issued for the purpose of enabling the person to whom delivered to raise money thereon. When a person makes a note for the accommodation of another, it is almost always with the understanding and agreement that such other will take care of it and pay it at or before maturity. The cases decided in New York that a negotiable promissory note obtained by fraud or duress, or made with an express limitation on its use and diverted, cannot be enforced against the maker by one who holds it as security merely for an antecedent or pre-existing debt, have no application if Continental Nat. Bank v. Townsend and Grocers' Bank v. Penfield, supra, are good law. I do not find they have been questioned or shaken. Vosburgh v. Diefendorf, 119 N. Y. 357, 23 N. E. 801, 16 Am. St. Rep. 836, First Nat. Bank v. Green, 43 N. Y. 298, and Farrington v. Frankfort Bank, 24 Barb. (N. Y.) 554, were cases where the notes were secured by fraud or duress. In First Nat. Bank v. Green, supra, Rapallo, J., said:

"A plaintiff, suing upon a negotiable note or bill purchased before maturity, is presumed, in the first instance, to be a bona fide holder. But when the maker has shown that the note was obtained from him under duress, or that he was defrauded of it, the plaintiff will then be required to show under what circumstances and for what value he became the holder. 2 Greenl. Ev. § 172; McClintick v. Cummins, 2 McLean 98 [Fed. Cas. No. 8,698]; Munroe v. Cooper, 5 Pick. (Mass.) 412; Holme v. Karsper, 5 Bin. (Pa.) 469; Vallett v. Parker, 6 Wend. (N. Y.) 615; 1 Camp. 100; 2 Camp. 574; Case v. Mechanics' Banking Ass'n, 4 N. Y. 166. The reason for this rule, given in the later English cases, is that, 'where there is fraud, the presumption is that he who is guilty will part with the note for the purpose of enabling some

154 F.—17

third party to recover upon it, and such presumption operates against the holder, and it devolves upon him to show that he gave value for it.' Bailey v. Bidwell, 13 Mees. & Wes. 73, approved in Smith v. Braine, 3 Eng. L. & Eq. 379, and in Harvey v. Towers, 4 Eng. L. & Eq. 531."

This is cited with approval in Vosburgh v. Diefendorf, supra, at page 365 of 119 N. Y., page 802 of 23 N. E. (16 Am. St. Rep. 836). In Phœnix Ins. Co. v. Church, 81 N. Y. 218, 37 Am. Rep. 494, the accommodation note was made for the express purpose of taking up a prior accommodation note, and was fraudulently diverted. In U. S. Nat. Bank v. Ewing, 131 N. Y. 506,[1] a note was indorsed for the accommodation of the maker in New York on the agreement it should be negotiated in Kentucky. The maker indorsed it to a New York bank as security for a precedent debt of his own. The court held, on the authority of Benjamin v. Rogers, that the surety has the right to impose any limit he may choose upon his liability and that he may always fix the precise terms on which he is willing to become a surety whether they seem to be material or immaterial. The court also said:

"The note sued upon was made by Madden and indorsed by Ewing for the accommodation of the maker, and by him was transferred to the plaintiff as added security upon a precedent debt. The holder parted with nothing upon receiving it, surrendered no right and no security, and made no new agreement in reliance upon it. In its hands it was, therefore, open to the defense that, made for one purpose, it had been used for another, and that its diversion had served to discharge the indorser."

Here was a diversion of the note. In Benjamin v. Rogers, supra, there was a plain diversion of the note under the following circumstances: One Calkins made his note for $4,000, payable to Nellie Petit, or bearer, one year from date. One Hathaway and one Crandall, defendant's testator, signed as sureties for his accommodation. It was made and so signed for the special purpose of enabling Calkins to borrow $4,000 of Petit. She refused the note, and Calkins then took it to the plaintiff, Rogers, and fully informed him of the purpose for which the note was made, and asked him to take it. Rogers took the note and surrendered to Calkins his past-due notes for about $2,000 and advanced about $2,000 in money. Held, if such were the facts, the diversion, plaintiff having full knowledge of the facts, was a defense to Crandall's executor. Coddington v. Bay, 20 Johns. (N. Y.) 637, 11 Am. Dec. 342, is a case where the notes in question were not owned by the persons who turned them out as security for a preexisting indorsement. R. & S. were employed by Bay to sell a vessel of his and take notes and send him. They sold the vessel and took notes, made payable to J. & S., however. J. & S. turned them out, without authority of Bay, to Coddington, to secure him for his liability as indorser on notes made long before. The bill was filed to compel Coddington to surrender up the notes to Bay, the true owner. It was held that Coddington could not hold the notes as against Bay. This was not accommodation paper put in circulation for the purpose of raising money or of being used by the holders. It was a plain misappropriation of the property of Bay, and as Coddington paid nothing, parted with no value, clearly the true owner was entitled to his notes. Here were equities in favor of Bay, and none, really, in

[1] 30 N. E. 501, 27 Am. St. Rep. 615.

favor of Coddington. Coddington took notes belonging to Bay, and which J. & S. had no right whatever to part with. Had J. & S. been authorized by Bay to dispose of the notes, and had Coddington then taken them as collateral security for an antecedent debt, the holding might have been different. The court held they were not received by Coddington in the usual course of trade. In view of Continental National Bank v. Townsend and Grocers' Bank v. Penfield, supra, we are brought, I think, to consider whether or not the negotiable instruments law of the state of New York has changed the rule as stated in those cases. Is the case here presented covered by that statute?

In questions of general commercial law the courts of the United States are not bound by the decisions of the state courts. Railroad Company v. National Bank, 102 U. S. 14, 26 L. Ed. 61; Oates v. National Bank, 100 U. S. 239, 25 L. Ed. 580; Swift v. Tyson, 16 Pet. 1, 10 L. Ed. 865; Carpenter v. Prov. Ins. Co., 16 Pet. 495, 10 L. Ed. 1044; Watson v. Tarpley, 18 How. 517, 15 L. Ed. 509. It is only when there is a positive statute of the state, or a long-established local custom having the force of a statute, that the courts of the United States are bound by such decisions, and then by those of the highest court of the state only. Swift v. Tyson, 16 Pet. 1-18, 10 L. Ed. 865; Railroad Co. v. National Bank, 102 U. S. 14, 29, 30, 31, 26 L. Ed. 61. There are many other cases to the same effect.

In Railroad Company v. National Bank, supra, the note was made by a New York corporation in New York, payable to the order of one Le Count, its treasurer, in New York, at Atlantic State Bank of Brooklyn. It was indorsed by him and by Palmer & Co., a firm composed of Thomas Palmer, Jr., and Anson S. Palmer; the former being the president and the latter the financial agent of the company, who indorsed without consideration. It was made to enable the company to raise money, and placed in the hands of Hutchinson & Ingersoll, note brokers of New York, for negotiation and sale. Instead of negotiating or selling the note, this firm used it as follows: Among other loans made by the plaintiff, the National Bank of the Republic, to Hutchinson & Ingersoll for the sole benefit of that firm, not on account of the note in question, or with it as collateral, or for the benefit of the maker in any way, was one of $10,000 made July, 1873. May 9, 1873, there was a loan of $36,000 by the same bank to them on this note and other collateral. The maker of the note had no part of the proceeds of either loan. This loan of $36,000 was paid out of the other collateral. July 22, 1873, a part of the collateral held for the said $10,000 loan having become worthless, Hutchinson & Ingersoll in writing pledged as collateral to all existing or later indebtedness to the bank all notes and collateral then held by it. After exhausting all collateral specially pledged as security for the $10,000 loan, $5,-136.68 remained due the bank thereon when the suit was brought. The maker of the note had no knowledge of this diversion thereof by Hutchinson & Ingersoll, and the bank had no knowledge or notice of the purpose for which the note was made or of the connection of the indorsers with the maker. Here was a plain diversion of the note by Hutchinson & Ingersoll, and therein the case differs from, and is much stronger for the claimant than, Grocers' Bank v. Penfield and

Continental Bank v. Townsend, supra. The facts were not in dispute, and, judgment having been given for the plaintiff, the Supreme Court affirmed the judgment, and in so doing laid down the broad doctrine that one who takes a negotiable promissory note, showing no defect on its face, made for accommodation merely, even if its use is restricted by agreement between the maker and the one to whom it is delivered in the first instance and it is diverted by him, in good faith, without knowledge of the limitation on its use, as collateral security merely for an antecedent or pre-existing debt, is a holder in good faith and for a sufficient consideration and freed of the equities between the original parties, provided the note is one where such holder becomes a party, and to hold the prior indorsers must present it for payment and give notice of nonpayment. And the court said (page 27 of 102 U. S. [26 L. Ed. 61]) :

"We are of opinion that the undertaking of the bank to fix the liability of prior parties, by due presentation for payment and due notice in case of nonpayment—an undertaking necessarily implied by becoming a party to the instrument [that is, the holder thereof as collateral security]—was a sufficient consideration to protect it against equities existing between the other parties of which it had no notice."

It will be noted that the antecedent debt is not regarded as a consideration, there being no extension of payment or satisfaction thereof. The court also said:

"It [the bank] assumed the duties and responsibilities of a holder for value, and should have the rights and privileges pertaining to that position."

This is in line with Grocers' Bank v. Penfield and Continental National Bank v. Townsend, supra, that one who takes such a note as security for an antecedent debt "occupies the position of a holder for value and is protected as such." Neither line of cases proceeds on the ground that the antecedent or pre-existing debt is a consideration in the sense of value paid or given.

In Railroad Company v. National Bank, supra, the court further says:

"Our conclusion, therefore, is that the transfer before maturity of negotiable paper as security for an antecedent debt merely, without other circumstances, if the paper be so indorsed that the holder becomes a party to the instrument, although the transfer is without express agreement by the creditor for indulgence, is not an improper use of such paper, and is as much in the usual course of commercial business as its transfer in payment of such debt. In either case, the bona fide holder is unaffected by equities or defenses between prior parties, of which he had no notice. This conclusion is abundantly sustained by authority. A different determination by this court would, we apprehend, greatly surprise both the legal profession and the commercial world."

The court then refers to Oates v. National Bank, 100 U. S. 239, 25 L. Ed. 580, and then says:

"The decisions of the New York court, which we are asked to follow in determining the rights of parties under a contract there made, are not in exposition of any legislative enactment of that state. They express the opinion of that court, not as to the rights of parties under any law local to that state, but as to their rights under the general commercial law existing throughout the Union, except where it may have been modified or changed

by some local statute. It is a law not peculiar to one state, or dependent upon local authority, but one arising out of the usages of the commercial world."

On this last question this court is referred to several cases holding that the United States courts are bound by and will follow the decisions of the state court. This is true as to the interpretation of the statutes of the state given by the highest courts of the state, and as to questions of mere local law which have become rules of property there, but not as to questions of general commercial law, unless some statute of the state has fixed definite rules defining the rights of the parties. This question was thoroughly considered by the Supreme Court of the United States in Oates v. National Bank, 100 U. S. 239, 242, 243, 244, 245, 246, 25 L. Ed. 580. The note in question here bore on its face no notice of any infirmity. That it was payable to the order of the maker and indorsed by it and by its treasurer was not a suspicious circumstance. In re Troy & Cohoes Shirt Company (D. C.) 136 Fed. 420, 432, affirmed by Circuit Court of Appeals, 142 Fed. 1038, 73 C. C. A. 523. Under the evidence before this court it was not good or collectible in the hands of the Brattleboro Manufacturing Company.

The holder of a note may make out his title by presumption until it is impeached by evidence showing the paper had a fraudulent or illegal inception. When this is done he can no longer rest on presumption, but it is incumbent on him to show the circumstances under which it came into his possession and that he took it in good faith. Stewart v. Lansing, 104 U. S. 505, 26 L. Ed. 866; Smith v. Sac County, 11 Wall. 139, 20 L. Ed. 102; Canajoharie Nat. Bank v. Diefendorf, 123 N. Y. 191, 25 N. E. 402, 10 L. R. A. 676; Joy v. Diefendorf, 130 N. Y. 6, 28 N. E. 602, 27 Am. St. Rep. 484; Jordan v. Grover, 99 Cal. 194, 33 Pac. 889; Market and Fulton Nat. Bank v. Sargent, 85 Me. 349, 27 Atl. 192, 35 Am. St. Rep. 376; Haines v. Merrill, 56 N. J. Law, 312, 28 Atl. 796; Northampton Nat. Bank v. Kidder, 106 N. Y. 221, 12 N. E. 577, 60 Am. Rep. 443; Hinckley v. Merchants' Nat. Bank, 131 Mass. 147. That these notes had an illegal inception within the rule is beyond all question. The holder, claimant, presented its claim thereon, and the illegality of its inception was then clearly shown. No attempt was made to show that the first indorsee from the maker, the Brattleboro Manufacturing Company, or Thompson, who next indorsed, took the note for value, or in due course, or in ignorance of its character. There is no presumption under this showing that it did. The Brattleboro Company is not shown to have been a holder in good faith. The burden of proof was on the claimant bank to show that it took the note in good faith, and occupied the position of a holder for value, or that it took it from one who did. Claimant has not shown that it holds for value actually paid or surrendered, or that the Brattleboro Manufacturing Company, or Thompson, took same in good faith. But it has shown that it took it from the Brattleboro Manufacturing Company, duly indorsed by it and by Thompson in due course, as defined and held in the cases cited, without any notice of defect or infirmity as collateral security. There was no circumstance attending the taking indicating bad faith. All the circumstances were shown. These show good faith. There was nothing to put the claimant bank on inquiry. While it did not part with

or give value, or extend payment, it occupies the position of a holder for value, and is protected as such. It assumed the duty and obligation of presenting the note for payment and of giving notice of nonpayment. The negotiable instruments law of the state of New York was not intended to change, and has not changed, the rule declared in Grocers' Bank v. Penfield and Continental Nat. Bank v. Townsend, supra. The Court of Appeals in this state has not so construed the statute. Nor do the decisions of the Appellate Division of the Supreme Court so hold. The question was not there directly presented and passed upon.

Section 51 of the negotiable instruments law declares two things: (1) "Value is any consideration sufficient to support a simple contract," and (2) "an antecedent or pre-existing debt constitutes value." In view of the decisions of the Supreme Court of the United States that the undertaking and obligation of the one to whom such paper is indorsed as collateral security merely to present for payment and give notice of nonpayment constitutes a sufficient consideration for the transfer, I hold that, within the terms of section 51, the claimant bank was a holder of this note for "value"—not for value paid on surrendered, but "value," consisting of its undertaking and obligation, and which would uphold a simple contract. This is "value" in the same sense that an agreement to extend time of payment is "value."

The referee has found as a fact "that at the time of the issuing and delivery of said notes said Trautwine stated to Morgan that said notes were to be used as collateral security only, and that the same would be returned to Morgan before maturity." Under my conclusions, I do not see that this is very material; but I find nothing to support the finding that it was stated they were to be used as collateral only. The attorneys for the respective parties have submitted a statement signed by them as to the facts shown by the evidence, and it contains no such statement. On the other hand, the statement is that the maker was to receive 3 per cent. for their use, and that they were to be "issued for accommodation." When notes are "issued for accommodation," and there is no other limitation, the use is not limited to putting them up as collateral only. They may be discounted outright. But even if there was such a statement, which I fail to find anywhere, within Railroad Company v. National Bank, supra, the result is the same. The finding of fact in that regard is not sustained. Swift v. Tyson, Oates v. National Bank, and Railroad Company v. National Bank have been repeatedly cited and approved in the Supreme Court of the United States. American File Co. v. Garrett, 110 U. S. 294, 4 Sup. Ct. 90, 28 L. Ed. 149; Montclair v. Ramsdell, 107 U. S. 161, 2 Sup. Ct. 391, 27 L. Ed. 431; People's Sav. Bank v. Bate, 120 U. S. 564, 7 Sup. Ct. 679, 30 L. Ed. 754. In the latter case, however, it was held the principle does not apply to a chattel mortgage given to secure a pre-existing debt, where the mortgagee has neither parted with anything nor agreed to postpone or delay the collection of such antecedent debt. While the rule is a harsh one in some cases as to the general creditors, and here may result, possibly, in the establishment of claims to the amount of $160,000 against this bankrupt estate on notes issued by Morgan and for which the company received but a slight considera-

tion, the 3 per cent. for their use, and which were made and issued without authority of the board of directors, and which the company had no right to issue in any event, for it had no authority to make accommodation notes, still the protection of the business world in taking negotiable paper demands stringent rules of commercial law as to commercial paper and a strict enforcement thereof.

The result is that the order of the referee disallowing the claim as to the $5,000 note in question is reversed and set aside, and he is directed to make an order allowing the claim, unless it can be shown that the debts for which the bank holds it as collateral have been paid.